Shamey et al., Appellants, *v.* State Farm Mutual Automobile Insurance Company.

216

Argued April 11, 1974. Before WATKINS, P. J., JA-
COBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and
SPAETH, JJ.

*Robert B. Truel,* with him *Blair J. Harkett,* and
*Truel and Ploeger,* for appellants.

*C. Leon Sherman,* with him *Harry W. Miller,* and
*Miller and Sherman,* for appellee.

OPINION BY CERCONE, J., June 21, 1974:

This appeal arises from the lower court's granting
of State Farm's motion for a summary judgment which
resulted in dismissal of the Shameys' suit in assumpsit.
The facts are as follows:

On a snowy evening in December of 1963, the
Shameys were returning home from a visit with their
relatives. The route they took required that they nego-
tiate a hill on Babcock Boulevard in Allegheny County,
which had become very slippery because of impacted
snow and ice. With tires spinning as they started their
climb, their car could not pull the grade, and it came
to a standstill short of the hilltop. A car driven by a
Mr. McFarland then appeared at the crest of the hill
and began its descent. It apparently skidded and
struck the Shamey car, spinning it 180 degrees, so that
the Shameys' car was then facing downhill. The Shamey

car had just stopped its half revolution when a third vehicle, driven by a Mr. Osborn who was also descending the hill struck their car. While Mr. McFarland carried liability insurance, Mr. Osborn was uninsured. The Shameys subsequently filed suit against McFarland who joined Mr. Shamey and Osborn as additional defendants. At the instance of State Farm, the Shameys also filed suit against the uninsured Osborn.

The Shameys were insured by the defendant herein, State Farm Mutual Automobile Insurance Company, and their policy contained the standard Uninsured Motorists Clause as required by the Act of August 14, 1963, P. L. 909, §1, as amended, Pa. Stat. Ann. tit. 40, §2000. Payment under the Uninsured Motorists Clause was not unconditional, however. There were conditions precedent to State Farm's duty to pay thereunder, the most important of which was the exclusion of coverage for "bodily injuries . . . with respect to which . . . any person entitled to payment under this coverage . . . without written consent of the company, [shall] make any settlement. . . ."

In May of 1967, State Farm and the Shameys reached a compromise under the Uninsured Motorists Clause whereby State Farm tendered a check for $6,500 in return for the Shameys' execution of an instrument entitled, "Release and Trust Agreement." In pertinent part the Release and Trust Agreement provided:

"Received of State Farm Mutual Automobile Insurance Company . . . the sum of . . . $6,500.00 in full settlement and final discharge of all claims under the above numbered policy because of bodily injuries known and unknown and which may have resulted or may in the future develop and property damage sustained by Lois Ann Shamey by reason of an accident or occurrence arising out of the ownership or operation of an uninsured automobile by Thomas Osborn. . . .

. . .

"For consideration aforesaid, and to the extent of any payment made thereunder, the undersigned agrees to hold in trust for the benefit of the Company all rights of recovery which he shall have against any person or organization legally liable for such bodily injuries and property damage and assigns to the Company the proceeds of any settlement with or judgment against such person or organization.

. . .

"The undersigned further warrants that he has made no settlement with, given any release to or prosecuted any claim to judgment against any person or organization legally liable for such bodily injuries and property damage, and that no such settlement will be made, no such release will be given, and no such claim will be prosecuted to judgment without the written consent of the Company."

The Shameys did not cash the check; and, in June, they settled their suit against McFarland for $4,500, releasing McFarland and his insurer, Aetna Insurance Company.[1]  When State Farm learned of the settlement, it stopped payment on its check for $6,500.  The Shameys thereupon instituted this action based upon both the insurance policy and the check.  However, the lower court granted State Farm's motion for summary judgment, and the Shameys appealed.

The Shameys' principal argument on this appeal is that State Farm's subrogation rights are limited to Osborn, the uninsured motorist, or anyone who may be liable for his negligence.  Hence, the Shameys contend that the settlement with McFarland and Aetna did not

---

[1] State Farm had previously notified all the interested parties that it had compromised the Shameys' claim under the Uninsured Motorists provision in their policy.  They also informed the parties that the compromise included a subrogation agreement, and that any settlement with the Shameys, without the written consent of State Farm, would be "at their peril."

affect State Farm's subrogation rights. In support of this contention the Shameys refer us to the Release and Trust Agreement set forth above, which states that the settlement was for "bodily injuries known and unknown which have resulted or may in the future develop . . . sustained by Lois Ann Shamey by reason of the accident or occurrence arising out of the ownership or operation of an uninsured automobile by Thomas Osborn. . . ."

In rebuttal State Farm argues that the promises not to settle or prosecute to judgment refer to *"all rights* of recovery which [Lois Ann Shamey] shall have against *any* person or organization legally liable for *such* bodily injuries and property damage. . . ." Since McFarland and Aetna may be legally liable for all or part of the bodily injuries and property damage sustained by Lois Ann Shamey with regard to which State Farm settled the insurance claim, State Farm argues that its subrogation rights included them. We disagree.

First, as a matter of public policy, the statute requiring insurers to include uninsured motorists clauses in automobile insurance contracts is "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injuries through the negligent use of those highways by others:" *Harleysville Mut. Cas. Co. v. Blumling,* 429 Pa. 389 (1968); *Pattani v. Keystone Ins. Co.,* 426 Pa. 332 (1967); quoting from *Katz v. American Motorists Ins. Co.,* 53 Cal. Rptr. 669 (1966). Thus, to the extent that it is possible, an uninsured motorists clause in an insurance contract must be interpreted to effect that legislative intent, and any conditions or restrictions in the policy in derogation of that end are void as against public policy. As one Pennsylvania court has had occasion to declare: "To the extent that the policy language provided by respondent denigrates the right of the insured

to be fully compensated before the insurer is subrogated, we hold that such language is repugnant to [the uninsured motorists statute] . . . and is, therefore, of no effect:" *DeSantis v. America Mut. Liab. Ins. Co.*, 53 D. & C.2d 595 (Del. 1971). While other courts, in construing statutes virtually identical to the Pennsylvania statute here under consideration, have refused to enforce contract clauses similar or identical to State Farm's subrogation and "no settlement" clauses, we need not reach that question.[2] We note that problem principally because any contract provision which seeks to avoid responsibility in an area in which responsibility usually reposes should certainly be required to be clearly and unequivocally written, thus adding even greater force to the universally accepted doctrine that insurance policies will be strictly construed against the insurance company. "[T]he rule is that, where, by reason of ambiguity in the language employed in a policy or contract of insurance, there is doubt or uncertainty as to its meaning and it is fairly susceptible of two interpretations, one favorable to insured and the other favorable to the insurer, the former will be adopted. . . ." 18 P.L.E. Insurance, §94 at 554 (1959).

Despite the contention of the insurance company to the contrary, the phrase, "such bodily injuries," which

---

[2] In *Rhault v. Tsagarakos*, 361 F. Supp. 202 (D. Vt. 1973), the federal district court confronted a clause which required the insurance company's approval prior to settlement with an insured motorist if payment were to be made under the uninsured motorists clause. The court held: "Insofar as the clause restricts the insured's right to compromise and settle his claim against financially responsible motorists who might be liable to him, it is contrary to the purpose of the statute and against its policy." *Id.* at 207. Other jurisdictions have reached the same conclusion. See, e.g., *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Clem*, 273 So. 2d 218 (Ala. Civ. App. 1973); *American Motorists Ins. Co. v. Thompson*, 453 P. 2d 164 (Ore. 1969); *Harthcock v. State Farm Mut. Auto. Ins. Co.*, 248 S. 2d 456 (Miss. 1971).

appears in the subrogation clause of the release, requires analysis. The Shameys contend that that phrase refers only to bodily injuries for which the uninsured Osborn is liable, since the Release and Trust Agreement limits payment to "bodily injuries . . . which have resulted . . . by reason of an accident . . . arising out of the ownership or operation of an uninsured automobile by Thomas Osborn." State Farm argues that the phrase refers to liability for the injuries themselves regardless of whether Osborn was responsible. Lending force to State Farm's argument is the possibility that McFarland, and not Osborn, may have been negligent. Hence, had the Shameys prosecuted their claim to judgment against McFarland, State Farm's $6,500 payment would constitute a surplus in the nature of a double recovery.

The issue raises a question of first impression in Pennsylvania, and the other jurisdictions which have wrestled with this issue have reached different conclusions. See Widiss, A Guide to Uninsured Motorist Coverage §5.10 (1969). State Farm refers us to *Kisling v. MFA Mut. Ins. Co.*, 399 S.W.2d 245 (Mo. 1966) where the court held: "The *plain and positive language* of the consent exclusion makes the uninsured motorist coverage inapplicable to bodily injury with respect to which the insured shall, without the prior written consent of MFA 'make any settlement with . . . *any person or organization who may be legally liable therefor.*' See also Senn v. J. S. Weeks & Co., 180 S.E.2d 336 (S.C. 1971); La Bove v. American Employers Ins. Co., 189 So.2d 315 (La. 1966); Jessie v. Security Mut. Cas. Co., 488 S.W.2d 140 (Tex. 1972); Volkswagen Ins. Co. v. Taylor, 201 So.2d 624 (Fla. 1967)."

We, however, find no such clarity in the expression "such bodily injury;" and find the interpretation suggested by the Shameys to be at least equally reasonable as that proffered by State Farm. See *Michigan Mut.*

*Liab. Co. v. Karsten,* 163 N.W.2d 670 (1968); *Raitt v. National Grange Mut. Ins. Co.,* 285 A.2d 799 (N.H. 1971); *Nearhoof v. International Sales-Rentals Leasing Co.,* 251 So.2d 717 (Fla. 1971). Both arguments reasonably follow from the language in both the policy and the release and trust agreement—language which is a virtual transcription of the uninsured motorist statute. Since both interpretations of the agreement are reasonable, we shall adopt that interpretation which affords the widest coverage for the insured, by narrowly construing the conditions and limitations attached by the insurance company. This conclusion is supported by the reluctance of the courts of this Commonwealth to interpret uninsured motorist provisions in such a fashion that the injuries of innocent, insured motorists would go unremedied. See, e.g., *Harleysville Mut. Cas. Co. v. Blumling,* supra; *Pattani v. Keystone Ins. Co.,* supra; *Wiertel v. Legler,* 55 Erie L.J. 59 (1972); *DeSantis v. American Mut. Liab. Ins. Co.,* supra.

Finally, State Farm mentions in passing that the instant fact situation indicates that there was "only one accident." The facts clearly indicate the contrary. There were two separate collisions by two allegedly negligent drivers, and each will only be responsible for the injuries caused by his negligence: *McAllister v. Pennsylvania R. R. Co.,* 324 Pa. 65 (1936); Restatement of Torts, Second §433A and §433B; Prosser, Law of Torts §52 (4th ed. 1971). The mere fact that the two collisions occurred within a brief period of time, and therefore make the apportionment of damages difficult, does not render McFarland liable for the damage caused by Osborn's negligence. As Professor Prosser has stated: "Mere coincidence in time does not make the two one tort, nor does similarity of design or conduct, without concert. Evidence may be entirely lacking upon which to apportion some elements of the damages, such as medical expenses, or permanent dis-

ability, or the plaintiff's pain and suffering; but this never has been regarded as sufficient reason to hold one defendant liable for the damage inflicted by the other." Prosser, supra at p. 317. While the evidence produced at trial may indicate that McFarland's negligence put the Shameys in a position of peril, whereupon Osborn, foreseeably, collided with them,[3] such a possibility is purely speculative at this stage of the proceedings and not susceptible to adjudication by way of a motion for summary judgment. A motion for a summary judgment can be sustained only if the pleadings, depositions, answers to interrogatories, and admissions on file with affidavits show that there is no genuine issue as to any material fact in the case, so that the moving party is entitled to a judgment as a matter of law: *McFadden v. American Oil Co.*, 215 Pa. Superior Ct. 44 (1969).

Order of the lower court dismissing the plaintiffs' complaint is reversed and the case is remanded for further proceedings consistent with this opinion.

VAN DER VOORT, J., dissents.

---

[3] See Restatement of Torts, Second, §433A, Comment c & Illustration 2.