454 A.2d 973

**Gus G. DAVIS and Clare Davis, Appellants,**

v.

**GOVERNMENT EMPLOYEES INSURANCE COMPANY.**

Supreme Court of Pennsylvania.

Argued Oct. 27, 1982.

Decided Dec. 30, 1982.

Jerome M. Dubyn, Philadelphia, for appellant.

David M. McCormick, Philadelphia, Richard C. Angino, Harrisburg, for appellee.

Charles T. Roessing, Philadelphia, for Pa. Def. Institute.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and McDERMOTT, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

Under Pennsylvania's Uninsured Motorist Coverage Law, Act of August 14, 1963, P.L. 909, § 1, as amended, 40 P.S. § 2000 (1971), all automobile insurance liability policies are required to include coverage for injuries to the insured which are caused by "uninsured" motorists. At issue on this appeal is whether a motorist who has the minimum amount of liability insurance required by Pennsylvania's financial responsibility law is nevertheless an "uninsured" motorist within the meaning of the statute whenever he causes an accident in which his insurance coverage is insufficient to indemnify the injured party for his losses.[1]

I

The essential facts are uncontroverted. Appellant Gus Davis and his spouse Clare Davis sustained injuries when their automobile collided head-on with an automobile owned and driven by Michael McFadden.[2] McFadden, who admitted liability, was insured by Travelers Insurance Company under a liability policy of $35,000, an amount sufficient to meet the financial responsibility requirements contained in Pennsylvania's No Fault Act, Act of July 19, 1974, P.L. 489, 40 P.S. § 1009.101 et seq. Pursuant to a settlement, Travelers paid $3,863 to the Davises for the damage to their automobile, $6,670 to Clare Davis in full settlement of her personal injury claim, and $24,467 (the balance of the $35,-000) to appellant Gus Davis in partial settlement of his personal injury claim, which alleges damages in excess of $100,000.

At the time of the accident, appellant was insured by appellee Government Employees Insurance Company (GEI-CO) under a policy which provided coverage for three sepa-

1. This case was reassigned to this writer on December 13, 1982.

2. Although Clare Davis is named as an appellant in the present case, her claim for personal injuries has been satisfied in full. Thus, "appellant" will refer to Gus Davis only.

rate vehicles. As required by law, appellant's policy included uninsured motorist coverage of $15,000 per person and $30,000 per accident for each vehicle. The GEICO policy defined "uninsured automobile" as

> "an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the state in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder . . ." [3]

Appellant Gus Davis filed an uninsured motorist claim with appellee GEICO under the uninsured motorist provision of his own policy. Appellant's claim was based on the theory that, because his alleged damages ($100,000) exceeded his recovery from Travelers under the settlement agreement ($24,467), tortfeasor McFadden was an "uninsured" motorist. Appellant claimed that he was entitled to recover $20,533 from GEICO, the difference between the "stacked" value of his uninsured motorist coverage ($45,000), see *State Farm Mutual Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978), and his recovery from Travelers. GEICO denied coverage on the ground that under the policy's definition of "uninsured automobile" there was no uninsured motorist involved in the accident.

■ Appellant's uninsured motorist claim proceeded to arbitration pursuant to the arbitration clause in appellant's policy.[4] A majority of a panel of three arbitrators held that,

---

3. This definition is taken verbatim from the definition of "uninsured automobile" promulgated by the Pennsylvania Insurance Commissioner. See 31 Pa.Code § 63.2, Exhibit C.

4. The arbitration clause of the policy provides:
   "If any person making claim hereunder and the company do not agree that such person is legally entitled to recover damages from

because the tortfeasor maintained a policy of liability insurance in the minimum amount required by Pennsylvania law, appellant had not been injured by an uninsured motorist. Appellant filed a petition to vacate the arbitrators' award, alleging that the provision of the GEICO policy which defines uninsured automobile is contrary to the Uninsured Motorist Coverage Law. The Court of Common Pleas of Philadelphia denied appellant relief and the Superior Court affirmed. 296 Pa.Super. 198, 442 A.2d 727. We granted allowance of appeal, and now affirm.[5]

## II

Section 2000(a) of the Uninsured Motorist Coverage Law provides:

"No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of 'The Vehicle Code,' act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protec-

the owner or operator of an uninsured automobile because of bodily injury to the insured, or do not agree as to the amount of payment which may be owing under this part, then upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration in accordance with the rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. Such person and the company each agree to consider itself bound and to be bound by any award made by the arbitrators pursuant to this part."

5. We must reject appellee's contention that the court of common pleas lacked authority to review the merits of the arbitrators' award. Where, as here, a claimant challenges a provision of an uninsured motorist clause as being contrary to a statute, the court of common pleas may exercise jurisdiction over the claim. See *United Services Automobile Ass'n Appeal,* 227 Pa.Super. 508, 323 A.2d 737 (1978).

tion of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom."

Appellant contends that the Legislature intended the statutory language "uninsured motor vehicles" to encompass "underinsured motor vehicles," and that the GEICO policy thus fails to provide the coverage mandated by law. We do not agree.

■ The Statutory Construction Act of 1972 mandates that "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage...." 1 Pa.C.S. § 1903(a). Notwithstanding appellant's assertion that "uninsured" is equivalent to "underinsured," the only common and approved meaning of the word "uninsured" is "having *no* insurance," whether the term applies to a house, a boat, a life, or, as here, a motor vehicle.

Appellant attempts to avoid the plain meaning of "uninsured" by arguing that the adoption of such a "literal" interpretation would frustrate the remedial objectives of the uninsured motorist law. While the uninsured motorist law is to be liberally construed to accomplish its stated objectives, see *Harleysville Mut. Cas. Co. v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), it is inappropriate for this Court, under the guise of liberal construction, to enlarge the scope of the plain language of the uninsured motorist law by equating an uninsured motorist with one whose liability insurance meets statutory requirements but does not satisfy the injured party's claim. "When the words of a statute are free and clear from ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "Uninsured" simply does not mean "underinsured," and to hold otherwise would be to contravene the express judgment of the Legislature.[6]

6. Under appellant's interpretation every motorist, regardless of the amount of his liability insurance coverage, is potentially an "uninsured" motorist. The practical effect of this interpretation is to

Our interpretation of the Uninsured Motorist Coverage Law is in accord with that of nearly every other jurisdiction which has considered the issue of the scope of uninsured motorist coverage. See, e.g., *Wilbourn v. Allstate Ins. Co.*, 293 Ala. 466, 305 So.2d 372 (1974); *Travelers Ins. Co. v. Bouzer*, 39 Cal.App.3d 992, 114 Cal.Rptr. 651 (1974); *Simonette v. Great Am. Ins. Co.*, 165 Conn. 466, 338 A.2d 453 (1973); *Smiley v. Estate of Toney*, 44 Ill.2d 127, 254 N.E.2d 440 (1969); *Detrick v. Aetna Cas. & Sur. Co.*, 261 Iowa 1246, 158 N.W.2d 99 (1968); *McMinn v. New Hampshire Ins. Co.*, 276 So.2d 682 (Miss.1973); *DiLuzio v. Home Mut. Ins. Co.*, 289 N.W.2d 749 (Minn.1980); *Brake v. MFA Mut. Ins. Co.*, 525 S.W.2d 109 (Mo.Ct.App.), cert. denied, 423 U.S. 894, 96 S.Ct. 192, 46 L.Ed.2d 126 (1975); *Brack v. Middlesex Mut. Ins. Co.*, 118 N.H. 72, 382 A.2d 914 (1978) (per curiam); *Tucker v. Peerless Ins. Co.*, 41 N.C.App. 302, 254 S.E.2d 656 (1979); *Gorton v. Reliance Ins. Co.*, 77 N.J. 563, 391 A.2d 1219 (1978); *Shelby Mut. Ins. Co. v. Smith*, 45 Ohio St.2d 66, 341 N.E.2d 597 (1976); *Lund v. Mission Ins. Co.*, 270 Or. 461, 528 P.2d 78 (1974) (en banc); *Ziegelmayer v. Allstate Ins. Co.*, R.I., 403 A.2d 653 (1979); *Strunk v. State Farm Auto. Ins. Co.*, 90 Wash.2d 210, 580 P.2d 622 (1978). See also *Safeco Ins. Co. of America v. Wetherill*, 622 F.2d 685 (3d Cir.1980) (applying Pennsylvania law). See generally Widiss, "A Guide to Uninsured Motorist Coverage," § 2.35(a) (Supp.1981) and Automobile Insurance: What Constitutes An "Uninsured" or "Underinsured" Vehicle or Motorist Within Uninsured Motorist Coverage, 26 A.L.R.3d 883 § 5 (Supp.1982) (citing cases). In each of these cases the court refused to equate "uninsured" with "underinsured," and we refuse to do so as well.

The cases from those jurisdictions which have allowed an injured party to recover under an uninsured motorist provision where his claims exceed his recovery from the responsi-

transform all policies of uninsured motorist coverage issued in this Commonwealth into policies of secondary or excess accident insurance. See *Travelers Ins. Co. v. Bouzer*, 39 Cal.App.3d 992, 995, 114 Cal.Rptr. 651, 652 (1974); *Gorton v. Reliance Ins. Co.*, 77 N.J. 563, 572, 391 A.2d 1219, 1225 (1978).

ble party's carrier do not support appellant's expansive interpretation of "uninsured." For example, in *Porter v. Empire Fire and Marine Ins. Co.*, 106 Ariz. 274, 475 P.2d 258, mod. on other grounds, 106 Ariz. 345, 476 P.2d 155 (1970), which is often cited as the leading case permitting recovery, the injured party sought and received only the difference between the minimum insurance required by state law and his recovery from the tortfeasor's insurer. Similarly, in *Palisbo v. Hawaiian Ins. Co.*, 57 Haw. 10, 547 P.2d 1350 (1975), and *American Mutual Ins. Co. v. Commercial Union Ins. Co.*, 116 N.H. 210, 357 A.2d 873 (1976), the courts expressly refused to permit recovery of claimed damages in excess of the minimum amount specified in the state's financial responsibility law.

We recognize the "oft cited anomaly that those in the position of these claimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured, rather than underinsured." *Gorton v. Reliance Ins. Co.*, 77 N.J. 563, 570, 391 A.2d 1219, 1223 (1978). This anomaly, however, stems from the fact that the Legislature has chosen not to require insurance coverage for those instances in which a tortfeasor's insurance is insufficient to satisfy the injured party's claims.[7]  Our Legislature having chosen not to require such coverage, this Court may not enlarge the scope of the plain meaning of the Uninsured Motorist Law to circumvent the Legislature's judgment.

Because the responsible party in this accident maintained the statutorily required amount of insurance and thus was not in any respect an uninsured motorist, the order of the

7.  Several state legislatures have required the insurer to offer "underinsured motorist coverage." See, e.g., Me.Rev.Stat.Ann. tit. 24–A § 2902(1) (Supp.1980–81). Other legislatures have amended their definitions of an "uninsured motor vehicle" to include specifically those motor vehicles whose applicable liability coverage is lower than the limits available to the injured party under his uninsured motorist coverage. See, e.g., Fla.Stat. § 627.722(3)(6) (Supp.1978); Ga.Code Ann. § 56–407.1 (Supp.1980); Tenn.Code Ann. § 56–7–1201 (1980).

Superior Court upholding the denial of appellant's uninsured motorist claim is affirmed.

Order of the Superior Court affirmed.

HUTCHINSON, J., did not participate in the consideration or decision of this case.

LARSEN, J., files a dissenting opinion in which FLAHERTY, J., joins.

LARSEN, Justice, dissenting.

I dissent to the majority's restrictive construction of the uninsured motorist statute which is contrary to our long standing liberal approach to uninsured motorist coverage and to perceived public policy.

The appellants challenge the validity of the GEICO policy provision which defines an uninsured automobile as follows:

"Uninsured automobile" means:

(1) an automobile with respect to the ownership, maintenance or use of which there is, in at least the amounts specified by the financial responsibility law of the State in which the insured automobile is principally garaged, no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any person or organization legally responsible for the use of such automobile, or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same is or becomes insolvent or denies coverage thereunder; or

(2) a hit-and-run automobile as defined;"

The language of the GEICO policy provision is substantially identical to that approved and promulgated by the Pennsylvania Insurance Commissioner [1] under authority granted by

1. 31 Pa.Code § 63.2 (Exhibit C II(c)(1)).

the uninsured motorist statute.[2] Resolution of the primary question presented by this appeal turns on construction of the phrase "uninsured motor vehicles", or more particularly of the word "uninsured", as used in the Uninsured Motorist Insurance Protection Act. The Act provides as follows:

(a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 of article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58),[1] under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, Provided, that:

(1) An owner or operator of (i) any motor vehicle designed for carrying freight or merchandise or, (ii) any motor vehicle operated for the carriage of passengers for hire or compensation, having in either instance been granted a certificate of public convenience or a permit by the Pennsylvania Public Utility Commission or been issued a certificate of public convenience and necessity or a permit by the Interstate Commerce Commission, and

(2) An owner or operator of any other motor vehicle designed for carrying freight or merchandise or operated for the carriage of passengers for hire whose employes are insured under the provisions of "The Pennsylvania Workmen's Compensation Act," act of June 2, 1915 (P.L. 736), as amended, shall have the right to reject such coverage in writing in which event, such coverage need not be provid-

2. Uninsured Motorists Insurance Protection Act, 1963, Aug. 14, P.L. 909 § 1, as amended 1968, Dec. 19, P.L. 1254, No. 397, § 1, effective Jan. 1, 1969, 40 P.S. § 2000.

ed in or supplemental to a renewal policy where such insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

(b) For the purpose of this coverage the term "uninsured motor vehicle" shall be deemed to include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.

(c) An insured's insolvency protection shall be applicable only to accidents occurring during a policy period in which its insured's uninsured motorist coverage is in effect where the liability insurer of the tort-feasor becomes insolvent within six years after such an accident.

(d) In the event of payment to any person under the coverage required by this section, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made, including the proceeds recoverable from the assets of the insolvent insurer. Whenever an insurer shall make payment under the coverage required by this section, which payment is occasioned by an insolvency, such insurer's right of recovery or reimbursement shall not include any rights against the insured of said insolvent insurer, but such paying insurer shall have the right to proceed directly against the insolvent insurer or its receiver, and in pursuance of such right such paying insurer shall possess any rights which the insured of the insolvent insurer might have had if the insured of the insolvent insurer had personally made the payment.

(e) The coverage required by this section does not apply:

(1) To property damage sustained by the insured.

(2) To bodily injury sustained by the insured with respect to which the insured or his representative shall,

without the written consent of the insurer, make any settlement with or prosecute to judgment any action against any person who may be legally liable therefor.

(3) In any instance where it would inure directly or indirectly to the benefit of any workmen's compensation carrier or to any person qualified as a self-insurer under any workmen's compensation law.

(f) Nothing herein contained shall be construed to prevent any insurer from affording the coverage required by this section under terms and conditions more favorable to its insured than are provided herein.

1963, Aug. 14, P.L. 909, § 1 as amended 1968, Dec. 19, P.L. 1254, No. 397, § 1, effective Jan. 1, 1969.

The term "uninsured" is undefined by the statute, therefore it is the Court's task to interpret its meaning in light of the purpose of the kind of insurance mandated by the act. Reference to a standard dictionary of the English language tells us that the prefix "un" means "not".[3] Uninsured, then, means not insured. However, this is not of much help in interpreting the word "uninsured" within the context of the act. Assuming that the legislature would have used the phrase "not insured motor vehicles" instead of "uninsured motor vehicles", we still would be faced with the question of the meaning of "not insured" as we are faced here with ascertaining the meaning of "uninsured". The question arises; uninsured (not insured) as to what? The uninsured motorist statute has a purpose or an object to accomplish, and it is within the ambit of that purpose or object that the meaning of "uninsured" is found.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Statutory Construction Act, 1972, Dec. 6, P.L. 1339, No. 290 § 3(a), 1 Pa. C.S.A. § 1921(a). Where the words of a statute are not explicit, legislative intent may be ascertained by considering, among other matters, the occasion and necessity for the statute; the circumstances

---

**3.** Webster's New Collegiate Dictionary, Copyright 1977, G.C. Merriam Co.

under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes upon the same or similar subjects; the consequences of a particular interpretation; the contemporaneous legislative history; and the legislative and administrative interpretations of such statute. Statutory Construction Act, Supra.

In *Harleysville v. Blumling,* 429 Pa. 389, 241 A.2d 112 (1968), this Court stated, "The purpose of the uninsured motorist law is to provide protection to innocent victims of irresponsible drivers." The object to be accomplished by uninsured motorist coverage is to provide financial recompense to those who are injured through the negligence of motorists who prove to be not financially responsible and cannot be made to pay for the losses caused by their carelessness. See: *Johnson v. Concord Mutual Insurance Co.,* 450 Pa. 614, 300 A.2d 61 (1973); *Sands v. Granite Mutual Insurance Co.,* 232 Pa.Super.Ct. 70, 331 A.2d 711 (1974); *Shamey v. State Farm Mutual Automobile Insurance Co.,* 229 Pa.Super.Ct. 215, 331 A.2d 498 (1974). Our Courts have repeatedly stated that in order to give effect to the broad remedial purposes of the uninsured motorist law, the act must be construed liberally. *Johnson v. Concord Mutual Insurance Co.,* supra, *Pattani v. Keystone Insurance Co.,* 426 Pa. 332, 231 A.2d 402 (1967); *Harleysville v. Blumling,* supra. We reaffirmed this rule of liberal construction when we invalidated a policy exclusion which prevented recovery by an insured under his uninsured motorist coverage, where he was injured while occupying another vehicle owned by a resident of the household and that vehicle was not an insured vehicle under his policy. *State Farm Mutual Automobile Insurance Co. v. Williams,* 481 Pa. 130, 392 A.2d 281 (1978).[4] Also see: *Marchese v. Aetna Casualty and Surety Co.,* 284 Pa.Super.Ct. 579, 426 A.2d 646 (1981).

4. This is one in a line of cases which follow the liberal rule in construing the Uninsured Motorist Statute: *Harleysville v. Blumling,* 429 Pa. 381, 241 A.2d 112 (1968) ("other insurance" clause held repugnant to statute); *Pattani v. Keystone Insurance Co.,* 426 Pa. 332, 231 A.2d 402 (1967) (insolvency of tortfeasor's insurance carrier

The question of construction of the phrase "uninsured motor vehicles" has been considered in other jurisdictions from New Hampshire to Hawaii with conflicting approaches and results. Some jurisdictions have adopted a literal approach [5]; while others have followed the liberal rule. *Porter v. Empire Fire and Marine Insurance Co.,* 106 Ariz. 274, 475 P.2d 258 (1970) modified on other grounds, 106 Ariz. 345, 476 P.2d 155 (1970); *Palisbo v. Hawaiian Insurance & Guaranty Co.,* 57 Haw. 10, 547 P.2d 1350 (1975); *American Mutual Insurance Company v. Commercial Union Insurance Co.,* 116 N.H. 219, 357 A.2d 873 (1976). In these cases, even though the injured victim recovered some damages from the tortfeasor's insurance carrier, the Courts permitted further recovery under the victim's uninsured motorist coverage as to the difference between his recovery from the tortfeasor's insurer and the minimum insurance coverage required by law. In each case the tortfeasor was deemed to be uninsured, within the meaning of the State Uninsured Motorist Statute, as to that difference. In *Porter, supra,* the plaintiff, along with four other persons, was injured in an automobile accident caused by the negligence of another. The tortfeasor had liability insurance in the minimum amounts of $10,000.00 for each person, $20,000.00 for each occurrence, and $5,000.00 property damage. The tortfeasor's carrier settled with Porter and the others in the full amount of the

occurring after the accident entitles injured victim to recovery under his uninsured motorist insurance); *Bankes v. State Farm Mutual Auto Insurance Co.,* 216 Pa.Super.Ct. 162, 264 A.2d 197 (1970) (policy exclusion denying coverage to insured while operating a motorcycle owned by him but not insured under the policy held void); *Shamey v. State Farm Mutual Auto Insurance Co.,* 229 Pa.Super.Ct. 215, 331 A.2d 498 (1974) (the policy word "such bodily injury" interprets to give the widest coverage for the insured); *United Services Automobile Association Appeal,* 227 Pa.Super.Ct. 508, 323 A.2d 737 (1974) (physical contact requirement in policy held repugnant to the Act); *Brader v. Nationwide Mutual Insurance Co.,* 270 Pa.Super.Ct. 258, 411 A.2d 516 (struck exclusionary clause which allowed insurer to off-set No Fault benefits received by insured against uninsured motorist benefits); *Gerardi v. Harleysville,* 293 Pa.Super.Ct. 375, 439 A.2d 160 (declared invalid a territorial restriction provision in policy).

5. See list of citations set forth in majority opinion.

policy limits. Porter received $2,500.00. His damages were $10,000.00. Porter demanded $7,500.00 from his uninsured motorist insurance carrier which was the difference between his total damages and the amount he was paid by the tortfeasor's insurer. His insurance policy defined "uninsured automobile" in exactly the same language as is in the Geico policy before us. The Arizona Supreme Court held that Porter was entitled to recover the balance of his damages—$7,500.00, under his uninsured motorist coverage.

> "We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance; *provided* that there be *available to him* the full amount of his damages, up to the minimum amount prescribed by the Financial Responsibility Act, which in this case is $10,-000.00. This is so whether this sum is recoverable under the insured's policy alone or in combination with those funds actually recoverable from the tortfeasor's liability coverage." *Porter v. Empire, supra.*

> ". . . where the tortfeasor's automobile liability insurance is inadequate to provide compensation to the injured policyholder of an uninsured motorist policy, for at least the minimum amounts specified by the financial responsibility law, the tortfeasor is, as to that policyholder, 'uninsured' to the extent of the insufficiency for purposes of the statute." *Palisbo v. Hawaiian Insurance and Guaranty Co. Ltd.,* 57 Haw. 10, 547 P.2d 1350 (1976).

The liberal rule followed by these courts more closely parallels the construction approach consistently applied by this Court in interpreting uninsured motorist coverage. "The legislative intent in enacting the uninsured motorist law . . . requires a liberal construction of the statute, and a pronounced propensity on the part of the courts to find coverage unless equally strong legal and equitable considerations to the contrary are present. *Sands v. Granite Mutual Insurance Co., supra.*

Under the construction, adopted by the majority, which holds that "uninsured" means no liability insurance coverage whatsoever, an innocent victim injured by a tortfeasor who had an insurance policy in the minimum amount required by statute [6] would be foreclosed from recovery under his uninsured motorist insurance. Assume, hypothetically, that an accident victim sustains damages of $500,000.00 as a result of another's negligence and the injured victim has uninsured motorist insurance in a total coverage amount of $500,-000.00, either under one policy or through a group of policies which can be "stacked". See: *State Farm Mutual Automobile Insurance Co. v. Williams, supra.* and *Marchese v. Aetna Casualty and Surety Co., supra.* Under the interpretation adopted by the majority the hypothetical accident victim could make full recovery for his damages only if:

(1) The tortfeasor was insured with a liability insurance policy with limits permitting payment to one person of $500,000.00.

(2) The tortfeasor was totally without insurance, that is he had no liability insurance coverage in any amount. Then the victim could recover $500,000.00 under his uninsured motorist coverage.

However, if the tortfeasor happened to have a liability insurance policy with the minimum statutory limits of $15,-000.00 for one person and $30,000.00 for one accident, then the injured victim would be precluded from recovery under his uninsured motorist insurance and his payment would be limited to $15,000.00. This recovery could be even less if he was one of several victims injured in the accident.

Applying the majority's holding to the appellant, Gus G. Davis, who claims damages in excess of $100,000.00 and who has uninsured motorist protection in the total amount of $45,000.00 (three separate policies of $15,000.00 each which can be stacked), leads to the following conclusion: If the tortfeasor McFadden was without liability insurance, appel-

**6.** 75 Pa. C.S.A. § 1747; 40 P.S. § 1009.104.

lant could recover a full $45,000.00.[7] However, since McFadden did have some insurance, the appellant's recovery is restricted to the limits of McFadden's policy (single limit policy of $35,000.00). In this case, because of the payment of other claims, appellant's recovery amounted to $24,467.00. Although this amount is greater than the minimum amount specified by the Financial Responsibility Law of Pennsylvania,[8] it is less than the appellant's alleged damages, and less than the amount of his uninsured motorist coverage for which he paid a premium. Clearly, under the majority's holding, the appellant would have been in a much better position, in terms of recovery of damages, had the tortfeasor been totally without insurance. I am not satisfied that the legislature intended to limit the recovery of an injured uninsured motorist policyholder to the limits of a tortfeasor's policy where the damages exceed those limits. In *State Farm Mutual Automobile Insurance Co. v. Williams, supra,* this Court said:

"The ... statute mandates a floor of minimum protection to be afforded to the owner/operator of a motor vehicle within the Commonwealth. The legislature has permitted enhancement of that minimum protection, but we believe the statute does not permit a diminution of that protection below the statutory limits."

"The Court in *Harleysville,* 429 Pa. at 395–96, 241 A.2d at 115, gave the following interpretive guide to the above statute:

'... The purpose of the Uninsured Motorist Law is to provide protection to innocent victims of irresponsible drivers. The amount of the coverage to be afforded by the uninsured motorist feature of the policy is set by statute, but nowhere, explicitly or implicitly, does the Act place a limit on the total amount a victim may recover if he suffers a loss resulting from the negligence of an uninsured motorist.' "

7. This, of course, is assuming that appellant, Gus G. Davis, can prove the damages alleged.

8. Note 6, *supra.*

It makes little sense that a person can purchase uninsured motorist coverage of $1,000,000.00, be innocently involved in a catastrophic accident which causes him enormous damages, and then painfully watch his coverage effectively blocked by a tortfeasor's $15,000.00 policy. I cannot agree that such a hit and miss, random benefits possibility is woven in the intent of the uninsured motorist law. It is unreasonable to believe that the legislature intended such anomolous results. The purpose of the Act is to provide insurance protection for damages which are suffered as a result of the negligence of another, and which damages are beyond any insurance coverage of a tortfeasor. The existence of a liability insurance policy and the limits thereof are not the critical elements. The key considerations are the actual damages suffered and the amount available for recovery. The primary thrust of the Uninsured Motorist Act is to provide a sound means of recompense for tortiously inflicted, uncompensated damages. It is not to provide paper coverage which evaporates when a tortfeasor produces a liability policy which provides or potentially provides the victim with compensation for his damages at something less than dollar for dollar. This was recognized in *Pattani v. Keystone Insurance Co.*, 426 Pa. 332, 231 A.2d 402 (1967), where at the time of the accident the tortfeasor was insured by Wissahickon Mutual Casualty Co. and the injured party, Pattani, was insured by Keystone Insurance Company. Included in Pattani's policy was uninsured motorist protection. Pattani sued the tortfeasor for the damages he sustained and recovered an award for $719.00. Before the tortfeasor's insurance carrier satisfied the award, it became insolvent and went into receivership. We held that the insolvency of the tortfeasor's insurance carrier occurring subsequent to the accident and the consequent inability to pay entitles the victim to recover under his uninsured motorist coverage.[9] This result recognized the innocent victim's right to collect for his uncompensated

**9.** Subsequent to the decision in *Pattani*, the uninsured motorist Act was amended, effective January 1, 1969, to include specifically within the definition of uninsured, the tortfeasor whose insurance carrier becomes insolvent subsequent to the accident.

damages under his uninsured motorist coverage, notwithstanding that the tortfeasor had a policy of insurance at the time of the accident.

The crucial question, therefore, is: Does the tortfeasor have insurance protection which will provide an innocent victim with an insurance fund from which he may recover for all of his damages? If the answer is yes, then no uninsured motor vehicle, is involved. If, however, the answer is in the negative, I would hold that within the meaning of the Act, the motor vehicle is "uninsured" to the extent by which the damages suffered exceed any insurance protection.

A purchaser of uninsured motorist insurance is buying coverage and insuring himself for damages he may suffer at the hands of a tortfeasor which otherwise are not covered by the tortfeasor's insurance policy. In some cases it is where the tortfeasor has no insurance, and in other cases it is where the tortfeasor's coverage *available* to the victim is less than the victim's damages. The cogent notion involved in an operative construction of the Act is the amount of the tortfeasor's insurance proceeds *available* to the victim vis a vis the amount of the victim's damages. It is not the mere existence of a policy of insurance, but rather *real* coverage as opposed to actual damages. In reality, an innocent, injured party who suffers damages of $30,001.00 due to the negligence of a tortfeasor who has a liability insurance policy with limits of $15,000.00/$30,000.00, is unprotected to a greater extent than a party who suffers damages of $15,000.00 at the hands of a tortfeasor who does not have an insurance policy.

The Uninsured Motorist Insurance Protection Act should be liberally construed to give effect to its purposes and intent. I would hold that where the tortfeasor's automobile liability insurance is insufficient to provide reparation for all of the damages sustained by an injured victim, the tortfeasor is, as to that victim, "uninsured", within the meaning of the Act, to the extent of the insufficiency. I believe the majority's interpretation is contrary to the aims and objec-

tives of the statute, and serves to frustrate its purposes. Accordingly, I would find the definition of "uninsured automobile" as set forth in the Geico policy and in the model form approved and promulgated by the Pennsylvania Insurance Commissioner [10] to be contrary to public policy and the purposes and intent of the Act.

I would reverse the Order of the Superior Court and remand this case to arbitration, therefore this dissent.

FLAHERTY, J., joins in this dissenting opinion.