551 A.2d 1106

**Alexander MEERZON and Lilia Groysman, Appellants,**

v.

**ERIE INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued April 21, 1988.

Filed Dec. 28, 1988.

Paul R. Sacks, Philadelphia, for appellants.

Joseph M. Oberlies, Philadelphia, for appellee.

Before OLSZEWSKI, KELLY and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the order below confirming an arbitration award. Appellants contend that the lower court erred in refusing to set aside the award because (1) the court employed the wrong standard of review; and (2) considered under the *proper* standard of review, the arbitration panel erred in concluding that appellants had failed to prove that the vehicle that struck their car was uninsured. For the reasons that follow, we agree and, accordingly, we reverse the order below, we vacate the arbitration award, and we remand the case for proceedings consistent with this Opinion.

On December 12, 1984, a car owned and driven by appellant Alexander Meerzon was involved in an automobile accident. As a result of the collision, both Meerzon and a passenger in his car, appellant Lilia Groysman, were injured. In February, 1986, appellants instituted this action by filing a petition to Compel Uninsured Motorist Arbitration against Meerzon's own insurer, appellee, Erie Insurance Company. On November 6, 1986, an arbitration hearing was held on the uninsured motorist claim. Following that hearing, the parties submitted supplemental memoran-

da. On March 25, 1987, the arbitrators, with one arbitrator dissenting, recommended that judgment be entered in favor of appellee. On June 2, 1987, the panel reaffirmed this decision. On July 2, 1987, appellants filed a petition in the Court of Common Pleas seeking to set aside the arbitration award. The lower court denied the petition and this timely appeal followed.

## I. STANDARD OF REVIEW

■ Appellants first contend that the lower court erred because it reviewed the arbitration decision pursuant to principles of common law arbitration rather than statutory arbitration.[1] Preliminarily, we note that "[i]t is always open to contracting parties to provide for statutory, rather than common law, arbitration." *Allstate Ins. Co. v. Fioravanti*, 451 Pa. 108, 116 n. 6, 299 A.2d 585, 589 n. 6 (1973). An important difference between the two types of arbitration is that statutory arbitration is subject to much broader judicial review than is common law arbitration. *Cf. Obdyke v. Harleysville Mutual Ins. Co.*, 299 Pa.Super. 298, 301, 445 A.2d 763, 765 (1982) (construing Pennsylvania Arbitration Act of 1927).[2]

Here, the car accident in which appellants were injured occurred on December 12, 1984. The insurance policy issued by appellee was in effect from September 22, 1984

1. It is undisputed that the lower court reviewed appellants' petition pursuant to common law arbitration principles. In its opinion, the lower court stated the standard of review as follows:
 It is axiomatic that *Common Law Arbitration* may only be vacated or modified upon a clear showing of fraud, misconduct, or other irregularity which caused an unjust, inequitable or unconscionable award to be entered....
 Lower Court Opinion at 2 (citation omitted) (emphasis supplied).

2. In common law arbitration, an award may not be vacated or modified "unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award." 42 Pa.C.S.A. § 7341. *Accord Young v. United States Fid. & Guar. Co.*, 299 Pa.Super. 237, 239, 445 A.2d 542, 543 (1982) ("'a commonlaw arbitration award is not reviewable on the basis of error of law or fact by the arbitrators'....") (citation omitted), *appeal dismissed*, 500 Pa. 233, 455 A.2d 635 (1983).

until September 22, 1985. *See* R.R. at 39a. The policy provided that if either party demanded arbitration to resolve a dispute regarding uninsured motorist coverage, the arbitration "shall be conducted in accordance with the Pennsylvania Arbitration Act of 1927." *See* Insurance Agreement at 9, R.R. at 118a. In addition, the parties stipulated that the arbitration proceeding was "a statutory arbitration under Act 27." N.T. November 6, 1986 at 35. Although the Act of 1927 was repealed and replaced by the Act of 1980 (codified at 42 Pa.C.S.A. §§ 7301–7362), the current statute contains provisions that govern agreements to arbitrate under the prior Act. Thus, section 501(b) of the 1980 Act provides, in relevant part, that,

> (b) The provisions of 42 Pa.C.S. § 7302(d)(2) (relating to special application) shall be applicable to any nonjudicial arbitration pursuant to:
>
> * * * * * *
>
> (2) An agreement heretofore or *hereafter made* which expressly provides for arbitration pursuant to the former provisions of the Act of April 25, 1927 ..., relating to statutory arbitration.

Act of 1980, Oct. 5, P.L. 693, No. 142 (codified as the Historical Note to 42 Pa.C.S.A. § 7302(d)(2)) (emphasis added). Section 7302(d)(2), in turn, provides the following standard of review:

> (2) [A] court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of this subchapter, modify or correct the award where the award is contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict.

*Id. See also Ragin v. Royal Globe Ins. Co.*, 315 Pa.Super. 179, 184, 461 A.2d 856, 858 (1983) (under § 7302, arbitration award may be vacated when award was due to egregious mistake of law on part of arbitrators); *id.*, 315 Pa.Superior Ct. at 184–85, 461 A.2d at 859 ("In order to establish legal order within the arbitration process, courts must refuse to

sanction monetary awards which are contrary to law, inequitable, unjust, or the apparent result of prejudice on the part of the arbitrators."). In light of the agreement between the parties and the provisions of the 1980 Act quoted above, we hold that the "contrary to law" scope of review should have been applied by the lower court.

## II. SUFFICIENCY OF EVIDENCE REGARDING UNINSUREDNESS

 We now turn to the merits of appellants' underlying contention. See Selected Risks Ins. Co. v. Thompson, 363 Pa.Super. 34, 37, 525 A.2d 411, 412 (1987), allocatur granted, 516 Pa. 614, 531 A.2d 781 (1987). Appellants contend that the arbitration panel majority erred in concluding that appellants had failed to prove the uninsuredness of the vehicle that struck them. In recommending that judgment be entered in favor of appellee, the neutral member of the arbitration panel, writing for the panel majority, reasoned as follows:

The record and supplemental data are without any evidence to establish that the vehicle or operator of the 1976 Ford which struck [appellants'] vehicle was uninsured. As a result, I am left with no choice but to recommend the entry of judgment in favor of Erie Insurance Company and against [appellants] in this Arbitration.

 * * * * * *

I was most reluctant to reach this result because I do believe that the statute strongly favors providing insurance where individuals are hurt through no fault of their own by an uninsured vehicle. However, the statute and policy set forth a condition precedent, i.e. proof that the vehicle was uninsured, which is completely absent, here.

See Supp.R.R. at 16b. The resolution of appellants' contention turns on the construction to be given the term "uninsured motor vehicles", or more precisely the word "uninsured", as that word is used in Pennsylvania's Uninsured Motorist Act ("Act"), 40 P.S. § 2000.

The Act requires that all automobile insurers offer policies that provide for coverage for bodily injury or death resulting from the actions of "owners or operators of uninsured motor vehicles." *Id.* § 2000(a).[3] The Act neither defines the term "uninsured", nor does it provide any guidance regarding the type or quality of proof necessary to show that a vehicle is uninsured.[4] It, therefore, is this Court's task to define the parameters of the term, *see Davis v. Government Employees Ins. Co.*, 500 Pa. 84, 88 n. 5, 454 A.2d 973, 975 n. 5 (1982);[5] *id.*, 500 Pa. at 95, 454 A.2d at 978

3. Section 2000(a) provides in its entirety:
 (a) No motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this State with respect to any motor vehicle registered or principally garaged in this State, unless coverage is provided therein or supplemental thereto in limits for bodily injury or death as are fixed from time to time by the General Assembly in section 1421 or article XIV of "The Vehicle Code," act of April 29, 1959 (P.L. 58), under provisions approved by the Insurance Commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom....
 *Id.* (footnote omitted).

4. We are aware that, in the insurance policy issued by appellee in the instant case, the relevant definition of an uninsured motor vehicle is "a land motor vehicle or trailer of any type ... [t]o which no bodily injury liability bond or policy applies at the time of the accident." Insurance Agreement at 8 (R.R. at 117a). This definition is substantially similar to both the definition approved and promulgated by the Pennsylvania Insurance Commissioner, *see* 31 Pa.Code § 63.2 (quoted in *White v. Concord Mut. Ins. Co.*, 296 Pa.Super. 171, 177, 442 A.2d 713, 716 (1982) (en banc), *aff'd* 500 Pa. 103, 454 A.2d 982 (1982)), and the definition contained in the Motor Vehicle Financial Responsibility Law. *See* 75 Pa.C.S.A. § 1702. We note, however, that these definitions, like the Uninsured Motorist Act itself, do not address the type or quality of proof necessary to prove uninsuredness. We further note that, even if the Insurance Commissioner and appellee defined the term uninsured in such a way as to narrow the scope of recovery, those definitions could not be valid if they contravened the policies behind the adoption of the Act. *See Adelman v. State Farm Mut. Auto. Ins. Co.*, 255 Pa.Super. 116, 127 & n. 16, 386 A.2d 535, 540 & n. 16 (1978).

5. The issue presented in *Davis* was "whether a motorist who has the minimum amount of liability insurance required by Pennsylvania's

(Larsen, J., dissenting), and we must do so in a manner "which harmonizes with the subject matter and its general purpose and object." *Busy Beaver Bldg. Centers v. Tueche*, 295 Pa.Super. 504, 512, 442 A.2d 252, 256 (1981). *See also Davis v. Government Employees Ins. Co., supra* 500 Pa. at 95, 454 A.2d at 978 (Larsen, J., dissenting); *Habecker v. Nationwide Ins. Co.*, 299 Pa.Super. 463, 468, 445 A.2d 1222, 1224 (1982) (when statute is unclear, court is bound to consider legislative purpose). *Accord* 1 Pa.C.S.A. § 1921(a) ("The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly.").

The courts of this Commonwealth have consistently emphasized the remedial purpose behind the Act. Thus, in *Boyle v. State Farm Mutual Automobile Insurance Co.*, 310 Pa.Super. 10, 456 A.2d 156 (1983), *allocatur denied*, we noted that "[t]he purpose of the uninsured motorist law has been frequently and consistently interpreted by our courts as providing protection to innocent victims of uninsured drivers." *Id.*, 310 Pa.Superior Ct. at 21, 456 A.2d at 162. *See also Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). The object to be accomplished by this coverage "is to 'afford financial recompense to persons who receive injuries or the dependents of those who are killed, solely through the negligence of motorists, who, because they are uninsured and not financially responsible, cannot be made to satisfy a judgment.' " *Johnson v. Concord Mut. Ins. Co.*, 450 Pa. 614, 619, 300 A.2d 61, 64 (1973) (citation omitted). *See also Harleysville Mut. Cas. Co. v. Blumling, supra* 429 Pa. at 395, 241 A.2d at 115 (uninsured motorist statute is "designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.") (citation omitted); *Webb v. United Serv. Assoc.*

financial responsibility law is nevertheless an 'uninsured' motorist within the meaning of the statute whenever he causes an accident in which his coverage insurance is insufficient to indemnify the injured party for his losses." 500 Pa. at 86, 454 A.2d at 973 (footnote omitted).

*Appeal*, 227 Pa.Super. 508, 323 A.2d 737 (1974), *allocatur denied.* Moreover, the courts have repeatedly emphasized that, in order to give effect to the broad remedial purpose of the uninsured motorist law, the Act must be construed liberally. *Johnson v. Concord Mut. Ins. Co., supra; Harleysville Mut. Cas. Co. v. Blumling, supra; Pattani v. Keystone Ins. Co.,* 426 Pa. 332, 231 A.2d 402 (1967). *See also Boyle v. State Farm Mut. Auto Ins. Co., supra* 310 Pa.Super. at 22, 456 A.2d at 162 ("[t]he legislative intent in enacting the uninsured motorist law requires a liberal construction of the statute, and a pronounced propensity on the part of the court to find coverage unless equally strong legal or equitable considerations to the contrary are present."). *Accord* 1 Pa.C.S.A. § 1928(c).

The facts are not in dispute.[6] The evidence presented at the arbitration hearing and in supplemental memoranda established that, after the accident, appellant Meerzon spoke with the driver of the other vehicle, and exchanged ownership and insurance information. As a result of this exchange, appellants learned the other driver's name and his telephone number, the year, make, and license plate number of his car, the name of his insurance company, and his insurance policy number.[7] Appellants' counsel attempted to verify the information provided by the other driver, so that appellants could institute an action against the owner/driver of the other vehicle and his insurance company. Appellants thereafter discovered, however, that the driver of the car that struck them had misrepresented his name, his telephone number, his insurance company, his policy

6. We are mindful that, in reviewing an award entered pursuant to a statutory arbitration proceeding, "[e]very inference of fact must be drawn in favor of sustaining the award." *Boyle v. State Farm Mut. Auto Ins. Co.,* 310 Pa.Super. at 15, 456 A.2d at 158. Here, however, appellee did not contest appellants' factual allegations regarding uninsuredness. Instead, appellee argued that the facts as alleged by appellants were insufficient to establish the uninsuredness of the other vehicle.

7. *See* N.T. November 6, 1986 at 11–13, 20, (R.R. at 14a–16a, 23a); Exhibit P–3, (R.R. at 42a).

number, and his license plate number.[8] In short, *all* of the information provided appellants at the scene of the accident was falsified. As a result of these misrepresentations, appellants, despite their best efforts both at the scene of the accident and afterwards, were *unable* to determine the identity of the driver or owner of the car that struck them.

Considering these facts in light of the remedial purpose behind the Act, we are convinced that the arbitration panel erred in concluding, as a matter of law, that appellants had failed to produce sufficient evidence to warrant a finding that the other vehicle was "uninsured." In many instances, proof of uninsuredness may be uncontested: for example, the tortfeasor may admit to being uninsured, or vehicle registration and insurance records may conclusively establish the fact of uninsuredness. Here, in the arbitrators' view, the difficulty with appellants' proof was that they could not demonstrate that the other vehicle was uninsured in such an *affirmative* manner. We note, however, that there is no *legislative* requirement that uninsuredness be proven in such a manner; instead, the Act is silent regarding the manner of proof. Accordingly, the letter of the Act does not prevent appellants' recovery in this case.

We note further that, although appellants could not establish uninsuredness through such admissions or documentary evidence, they did establish that despite their best efforts, and due to misrepresentations made by the other driver, it was not *possible* to ascertain whether the other vehicle was insured. Thus, the arbitration panel was presented with a situation in which the claimants were innocent victims, injured by an irresponsible driver, who, through his false statements, had rendered himself unidentifiable and hence judgment-proof. When viewed in light of the remedial purpose behind the Act and the presumption in favor of coverage, we see no principled difference between the case at bar and a situation in which the fact of uninsuredness is undisputed: in both instances, the claimant is

8. *See* N.T. November 6, 1986, at 13–21, (R.R. at 16a–24a); Exhibits P3–P9 (R.R. at 42a–52a); Plaintiff's Memorandum, November 17, 1986, at 3–4 (Supp.R.R. at 3b–4b).

an innocent victim who has suffered injury at the hands of a financially irresponsible driver. Moreover, in both instances the claimant cannot recover pursuant to an insurance policy held by the tortfeasor, and the claimant's only hope for financial recompense rests in his or her own insurance policy. We therefore hold, as a matter of law, that appellants produced sufficient evidence to establish that the vehicle that injured them was uninsured. Because the arbitrators' award was based on their erroneous construction of the term "uninsured", the award is contrary to law and must be vacated. *See* 42 Pa.C.S.A. § 7302(d)(2); *id.* § 7314(a)(1)(iii); *Ragin v. Royal Globe Ins. Co., supra.*

We find further support for our conclusion in the fact that, in an analogous situation (involving hit and run drivers), the legislature has defined the term "uninsured motor vehicle" to include instances where, as here, it is *impossible to determine* whether the other car was insured or uninsured. Thus, the Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. §§ 1701–1798 (effective October 1, 1984), provides that an "uninsured motor vehicle" may include

An *unidentified* motor vehicle that causes an accident resulting in injury provided the accident is reported to the police or proper governmental authority and the claimant notifies his insurer within 30 days, or as soon as practicable thereafter, that the claimant or his legal representative has a legal action arising out of the accident.

*Id.* § 1702 (emphasis supplied).[9] This expansive definition of the term "uninsured" is consistent with the remedial purpose behind all uninsured motorist legislation.

**9.** We note that, consistent with our duty to effectuate the remedial purpose behind uninsured motorist legislation, we have liberally construed the "hit and run" provisions of insurance policies. In *Binczewski v. Centennial Ins. Co.,* 354 Pa.Super. 229, 511 A.2d 845 (1986), the driver who struck the claimant's car stopped to ask if she was hurt, then immediately left the scene. *Id.,* 354 Pa.Superior Ct. at 230, 511 A.2d at 846. Soon after, a police officer arrived at the scene, and was told that a hit and run driver had been involved in the accident. *Id.,* 354 Pa.Superior Ct. at 231–32, 511 A.2d at 846–47. Judge Olszewski, writing for a unanimous panel, held that this evidence was sufficient to establish that the other vehicle was a hit and run vehicle under the

Although appellants do not argue that the car that injured them was a hit and run vehicle, this case is similar to a hit and run situation.[10] The main distinction is that, here, the vehicle has been rendered unidentifiable because of the other driver's misrepresentations, whereas in the classic hit and run case, the vehicle is "unidentified" because of the other driver's flight.[11] In both situations, however, it is *impossible* to determine whether the other vehicle was insured or uninsured. Moreover, each situation involves an innocent claimant, injured by an irresponsible driver who, through his criminal misconduct, has rendered himself judgment-proof. We can find no principled justification for a rule that would *allow* recovery when a vehicle is unidentified because of the other driver's criminal flight, but *disallow* recovery when the vehicle is unidentified because of the other driver's criminal misrepresentations.

In summary, appellants have shown that, despite their best efforts, they were unable to identify the driver or owner of the vehicle that had injured them. We hold that

uninsured motorist provision of the claimant's policy. *Id.* In so holding, Judge Olszewski stated that

We agree with the lower court that nothing in the insurance policy imposes a duty upon [the claimant] to actively question the driver of the vehicle which struck her "when the driver almost instantaneously drove away and left no information...."

*Id.,* 354 Pa.Superior Ct. at 232, 511 A.2d at 847 (citation omitted).

**10.** The insurance policy in the instant case provided for uninsured motorist coverage in the event that damage was caused by a hit and run vehicle. *See* Insurance Agreement at 8 (R.R. at 117a). The policy, like § 1702, required that the insured "promptly notify the police" in order to qualify for such coverage. *Id.* at 11 (R.R. at 121a). Appellants presented an argument in the court below based on the hit and run provision of the policy, but they have abandoned that argument on appeal.

**11.** A second distinction between this case and a classic hit and run situation is that there is no evidence that appellants reported the accident to the police, as is required both under their policy and under the statute. We note, however, that strict adherence to the reporting requirement would be pointless here because appellants had no reason to think that an unidentified vehicle was involved until long after the accident. In such a situation, we may question whether this fact alone would prevent a claimant from recovering under a hit and run theory.

this evidence was sufficient to establish that the vehicle that had injured appellants was "uninsured" as that term is employed in the Uninsured Motorist Act. Because the arbitrators' award was based on their erroneous construction of the term "uninsured", the award is contrary to law and should have been vacated.[12]

For the foregoing reasons, we reverse the order below, we vacate the arbitration award, and we remand the case to the lower court for proceedings consistent with this Opinion.

Reversed and remanded. Jurisdiction relinquished.

12. Appellants also contend that the arbitration award should be set aside on the ground that they were denied a hearing. *See* 42 Pa.C.S.A. § 7307(a)(4); *id.* § 7314. In light of our disposition of this appeal, we need not address this contention.