668 A.2d 1154

**Charles J. KELLY and Linda J. Kelly, Appellants,**

v.

**STATE FARM INSURANCE COMPANY.**

Superior Court of Pennsylvania.

Argued June 13, 1995.

Filed Dec. 18, 1995.

Marcia L. Cooper, Pittsburgh, for appellants.

Thomas A. McDonnell, Pittsburgh, for appellee.

Before CIRILLO, FORD ELLIOTT and HESTER, JJ.

FORD ELLIOTT, Judge:

Appellants come before us challenging an order of the Court of Common Pleas of Allegheny County Civil Division, entered December 7, 1994, in which appellants' petition to vacate an arbitration award was denied. We find that the supreme court's holding in *Hall v. Amica*, 538 Pa. 337, 648 A.2d 755 (1994), is dispositive of the issue of jurisdiction, and our recent decisions in *Chambers v. Aetna Casualty & Surety Co.*, 442 Pa.Super. 155, 658 A.2d 1346 (1995), and *Boyle v. Erie Insurance Co.*, 441 Pa.Super. 103, 656 A.2d 941 (1995), *allocatur denied*, 542 Pa. 655, 668 A.2d 1120, (filed September 18, 1995), are dispositive of the substantive issue. As a result, we reverse the trial court's order and vacate the arbitrator's award, finding instead that appellant is entitled to underinsurance motorist coverage from State Farm.

The underlying facts, to which the parties have stipulated, can be briefly recounted. Eleven-year-old Michelle Kelly was killed when a bicycle on which she was riding struck a pick-up truck driven by John Alberti. Michelle's parents, appellants herein, brought wrongful death actions on behalf of Michelle's estate against Mr. Alberti, the bicycle manufacturer, and the bicycle's owner. Each of the defendants was covered by a policy of insurance. Mr. Alberti's insurance policy, with Erie Insurance, provided for $50,000 liability.[1] Damages to Michelle's estate were projected by appellant's expert at approximately $600,000. Michelle's parents carried stacked underinsurance motorist coverage in the total amount of $30,000 with State Farm Insurance Company (State Farm), appellee herein.

---

1. The record does not indicate, nor does this appeal involve, the limits of liability insurance carried by the bicycle manufacturer and the bicycle owner.

After extensive discovery, the parties entered into a settlement agreement, in which they agreed to settle for the sum of $64,500. Prior to accepting the settlement offer, however, counsel for Michelle's estate contacted State Farm to place it on notice of the proposed settlement, and to request its consent to the settlement, or, in the alternative, to request that it substitute its own draft for the amount of the proposed settlement in order to protect its subrogation interest. State Farm consented to the settlement and waived its subrogation rights; however, State Farm denied underinsured benefits to Michelle's estate. (Joint factual stipulations, appellants' brief at Appendix A–2.)

According to appellants' Petition to Vacate the Arbitration Award, State Farm denied appellants' claim to underinsured motorist benefits because of appellants' alleged failure to comply with the terms of an "exhaustion clause" in their policy. That clause provided:

> There is no coverage for *bodily injury* arising out of the ownership, maintenance or use of an *underinsured motor vehicle* until:
>
> 1. The limits of liability of all bodily injury liability bonds and policies that apply have been used up by payment of judgments or settlements to other *persons;* or
>
> 2. Such limits of liability or remaining parts of them have been offered to the *insured* in writing.

State Farm policy, p. 13, R.R. at 52a (emphasis in original). According to State Farm, this clause required appellants actually to receive the underlying tortfeasor's liability limits as a precondition to receiving underinsured motorist benefits under their policy with State Farm. (Appellee's brief at 8.) Because Mr. Alberti carried $50,000 of insurance, and because his portion of the settlement amounted to only $12,500, State Farm argued that appellants had failed to meet the precondition and were thus not entitled to underinsured benefits.

When State Farm denied appellants' claim, the dispute was submitted to arbitration pursuant to the terms of the policy. The policy provided that resolution of disagreements regard-

ing entitlement to underinsured coverage be submitted to arbitration, and that "The Pennsylvania Uniform Arbitration Act,[2] as amended from time to time, shall apply." (*Id.* at 15, R.R. at 54a.) Accordingly, a panel of arbitrators was selected. In their Petition to Vacate, appellants alleged that the sole issue presented to the panel was:

whether [appellants] were required to actually exhaust the liability coverage available to the underlying tortfeasor (Mr. Alberti), or whether the exhaustion clause was void as against public policy, but nevertheless satisfied by giving State Farm credit for the full amount of coverage available to the tortfeasor in accordance with the decision of *Sinko v. CNA Insurance*, 141 P.L.J. 413 (C.C.P. Allegheny Cty., 1993) (Strassburger, J.).

Petition to Vacate, R.R. at 9a. By a vote of two (2) to one (1), the arbitration panel found in favor of State Farm. (R.R. at 3a.)

As already noted, appellants then petitioned the Court of Common Pleas of Allegheny County to vacate the award, alleging that the award was contrary to law and against the public policy of the Commonwealth. (Petition to Vacate Arbitration Award, R.R. at 9a–10a.) The trial court denied the petition by order dated December 7, 1994. In its memorandum in support of the December 7 order, the trial court gave two reasons for denying the petition. First, the trial court concluded that it had no jurisdiction to review a claim that an award of arbitration was "contrary to law." (Trial court memorandum, 12/5/94 at 4, R.R. at 105a.) Second, the trial court found that "even if one could properly address the merits of [appellants'] claim on the applicable law, it is not at all clear that the arbitrators have violated precedent." (*Id.* at 5, R.R. at 106a.) It is from this denial of their Petition to Vacate that appellants bring the instant appeal. We shall, therefore, next address the trial court's reasons for denying the petition *seriatim.*

2. 42 Pa.C.S.A. §§ 7301–7320, Subchapter A.

On the issue of a trial court's jurisdiction to review an arbitration award, we agree with appellant that *Hall v. Amica Mutual Insurance Co.*, 538 Pa. 337, 648 A.2d 755 (1994), is dispositive. In *Hall,* the supreme court affirmed this court's holding that "a court has the power to review an arbitration award which is based on the declaration of an insurance policy clause to be void as against public policy . . . . " *Id.* at 758, 648 A.2d at 758. The *Hall* court stated that its finding on the issue of jurisdiction was controlled by its recent decision in *Azpell v. Old Republic Insurance Co.*, 526 Pa. 179, 584 A.2d 950 (1991). The *Azpell* court noted that, in *Davis v. Government Employees Insurance Co.*, 500 Pa. 84, 454 A.2d 973 (1982), it had adopted the following rule, announced by this court in *United Services Automobile Association Appeal,* 227 Pa.Super. 508, 516, 323 A.2d 737, 741 (1974):

> 'Thus the rule, to which all the cases conform, is that where the application or construction of the [insurance] clause is at issue the dispute is within the exclusive jurisdiction of the arbitrators; the courts will take jurisdiction only where the claimant attacks *a particular provision of the clause itself* as being contrary to a constitutional, legislative, or administrative mandate, *or against public policy* or unconscionable.'

*Azpell, supra* at 182–84, 584 A.2d at 951–52 (emphasis added), *quoting United Services, supra* at 516, 323 A.2d at 741 (the *"Davis "* rule). State Farm argues that the *"Davis "* rule, although adopted by the *Hall* and *Azpell* courts, is inapplicable to the instant case because the rule was promulgated under the 1927 Pennsylvania Arbitration Act which is not applicable instantly. While we agree with State Farm that the 1927 Act is not applicable, we do not agree with State Farm's conclusion that the rule is not applicable. We base our disagreement on the supreme court's analysis in *Azpell* and in *Hall.*

The *Azpell* court was called upon to determine if an arbitration award of $15,000 of uninsured motorist benefits to a police officer who was injured by an uninsured driver while the officer was on duty was violative of the public policy limiting the officer's remedy to the Workmen's Compensation Act. *Id.*

at 180–82, 584 A.2d at 951.  In making its determination, the court noted the continued validity of the *"Davis"* rule, cited *supra*, but then found it inapplicable.  As the *Azpell* court stated:

> While we adhere to the *Davis* rule, we find it inapplicable in this appeal.
>
> In *Davis*, we were asked to review a *clause* of the insurance policy which the insured claimed was contrary to the existing uninsured motorists coverage law (UML).  We then reviewed the UML and determined that the insurance clause was not contrary to any existing statute and affirmed the denial of uninsured motorists benefits.  Our review was limited to a comparison and interpretation of an insurance contract provision with a particularly promulgated statute, as opposed to reviewing a monetary award.
>
> In this instance, the Superior Court did not find *any contract provision* contrary to public policy but rather, held that *the award itself* was contrary to public policy.  This result oriented analysis is exactly the type of review the legislature was attempting to avoid by promulgation of the Uniform Arbitration Act.  In fact, under the previous 1927 Act, the trial court was authorized to vacate arbitration awards which were contrary to the law.  However, this provision was omitted in the existing Act.

*Id.* at 183–84, 584 A.2d at 952 (emphasis added).  It is thus clear that the *"Davis"* rule applies to the Act that governs instantly, since the same Act was at issue in *Azpell*, and in *Hall*, which, as noted *supra*, was controlled by *Azpell*.  *See Azpell, supra* at 180–82, 584 A.2d at 951; *Hall, supra* at 339–40, 648 A.2d at 756.  Because the public policy challenge in the instant case was a challenge to a contract provision, as in *Hall*, and not a challenge to an award, as in *Azpell*, we find that the Court of Common Pleas had jurisdiction to hear this challenge.

■  Turning next to the merits of appellants' claim, we find this court's recent decisions in *Boyle, supra*, and *Chambers, supra*, dispositive.  In *Boyle*, the Boyles settled their claims arising from a motor vehicle accident with the two defendants,

Speelman and Hitchcock. The Speelman claim was settled for the limits of Speelman's liability coverage; however, the Hitchcock claim was settled for only fifty percent (50%) of Hitchcock's liability coverage. At the time of the accident in *Boyle*, as is the case instantly, Section 1731 of the Motor Vehicle Financial Responsibility Law mandated uninsured and underinsured motorist coverage.[3] When the Boyles brought a claim for underinsurance against their insurance carrier, however, the claim was denied. In denying the claim, the carrier, Erie Insurance, relied upon the "exhaustion clause" in the Boyles' policy, which provided:

> With respect to underinsured motor vehicles, we will not be obligated to make any payment until the limits under all bodily injury insurance policies and liability bonds applicable at the time of the accident, including other than motor vehicle insurance, have been exhausted by payment of settlements or judgments.

*Boyle, supra* at 106, 656 A.2d at 942.

The *Boyle* court first addressed the issue of whether "exhaustion clauses" were *per se* violative of public policy. Following this court's holding in *Kester v. Erie Ins. Exchange*, 399 Pa.Super. 206, 582 A.2d 17 (1990), *allocatur denied*, 527 Pa. 624, 592 A.2d 45 (1991), the *Boyle* court held that "exhaustion clauses are not *per se* invalid." *Boyle, supra* at 107, 656 A.2d at 943.[4]

---

**3.** This section of the statute was amended in 1990 to allow insureds to opt for such coverage; however, the statute still requires insurers to offer the coverage.

**4.** We note the excellent analysis engaged in by the Court of Common Pleas of Lycoming County, Clinton W. Smith, J., in *May v. State Farm Mutual Automobile Insurance Co. et al.*, No. 89–01,625, September 3, 1991. The *May* opinion addresses both of the issues before us instantly and involves the identical State Farm "exhaustion" clause. For a thorough discussion of the way in which State Farm's clause can be read as broadly as Erie's clause in *Boyle*, and is therefore likewise subject to judicial scrutiny, *see May, supra* at 26–30, appellants' brief, Appendix A–3. *May* was relied upon by appellants instantly, and by appellants in *Chambers*. *May* contains an excellent discussion of the issues as they have been addressed in other jurisdictions as well.

The *Boyle* court then turned to interpreting the language of the exhaustion clause so as to effect the legislative mandate of the Motor Vehicle Financial Responsibility Law [MVFRL], as required by the *"Davis"* rule, *supra:*

> To enforce the policy language strictly would have the effect of failing to provide the protection intended by the legislature for an insured driver. In some cases it may prevent an injured insured from accepting a reasonable, third party settlement and require that the third party litigation be pursued to final judgment. This would delay recovery when prompt payment was needed, would lessen the insured's recovery by requiring him or her to pay additional costs, and would unnecessarily burden the judicial system. . . .

> On the other hand, an exhaustion clause must be interpreted to provide protection to an insurance company against a demand by its insured to fill the 'gap' after a weak claim has been settled for an unreasonably small amount. The statutorily mandated coverage for underinsured motorist benefits was not intended to permit the insured absolute and arbitrary discretion to determine how payment should be apportioned between his or her own insurance company and the tortfeasor's liability carrier. . . .

*Id.* The *Boyle* court concluded:

> [T]he conflicting interests of insured and insurer can best and most fairly be served by construing the exhaustion clause in this case as a 'threshold requirement and not a barrier to underinsured motorist insurance coverage.' . . . Thus, when the insureds settled their claim against the tortfeasor's liability carrier for less than policy limits, the underinsured motorist carrier was entitled to compute its payment to its injured insureds as though the tortfeasor's policy limits had been paid. . . . Under this view, the insureds will not be allowed underinsured motorist benefits unless their damages exceed the maximum liability coverage provided by the liability carriers of other drivers involved in the accident; and their insurer will, in any event, be allowed

to credit the full amounts of the tortfeasors' liability coverages against the insureds' damages.

*Id.* at 109, 656 A.2d at 943–44 (citations omitted). *Accord Chambers v. Aetna Casualty & Surety Co.*, 442 Pa.Super. 155, 658 A.2d 1346 (1995).

Because we find that *Boyle* and *Chambers* are dispositive on the issue of how the exhaustion clause in the instant case should be interpreted so that it does not violate the legislative mandate of the MVFRL, we find that the clause must be interpreted so as to give State Farm "credit" for the $50,000 of liability coverage carried by Mr. Alberti, before appellants are entitled to underinsurance coverage. The parties stipulated that Michelle's estate suffered damages of approximately $600,000; therefore, appellants should be entitled to the full $30,000 of underinsurance coverage they carried under their two insurance policies with State Farm.

Accordingly, we reverse the order of the trial court denying appellant's petition to vacate the arbitration award, and we remand to the trial court for disposition consistent with this memorandum. Jurisdiction is relinquished.