Herman HARPER, Appellee,

v.

**PROVIDENCE WASHINGTON INSURANCE COMPANY,**
Appellant.

Superior Court of Pennsylvania.

Argued March 29, 2000.

Filed May 25, 2000.

As Revised June 22, 2000.

Michelle R. Sergent, Philadelphia, for appellant.

Arthur J. Seidner, Philadelphia, for appellee.

Before FORD ELLIOTT and MONTEMURO *, JJ., and CIRILLO, President Judge Emeritus.

CIRILLO, President Judge Emeritus:

¶ 1 Appellant Providence Washington Insurance Company (Providence) appeals from an order of the Court of Common Pleas of Philadelphia County denying its petition to vacate an arbitration award. We affirm.

¶ 2 Herman Harper, appellee, was injured in a car accident in Collingswood, New Jersey, during the course of his employment. Harper's employer, Advanced Delivery Services, provided Uninsured Motorist/Underinsured Motorist (UM/UIM) insurance coverage for Harper through Providence; the policy provided that this coverage was in excess of whatever other insurance was available to Harper. Providence is also the workers' compensation carrier for Advanced Delivery Services.

¶ 3 Harper believed his injuries were in excess of the tortfeasor's policy limits ($100,000.00) and, therefore, he filed a claim under the Providence policy for UM/UIM benefits. The tortfeasor against whom Harper had filed a third-party action offered to settle the case for $50,000.00; Harper refused this offer and the matter was set for trial in New Jersey.

¶ 4 With respect to the UIM claim, Providence contested the nature and extent of Harper's injuries and the matter was set for arbitration. Providence requested a continuance pending resolution of the third-party action in New Jersey; this request was refused and the matter proceeded to arbitration.[1]

¶ 5 Following the hearing, a unanimous panel awarded Harper $350,000.00, allowing a credit to Providence for $100,000.00 in the third-party case, bringing the net award to $250,000.00. Providence appealed and now raises the following claims:

1. Whether the trial judge erred in determining that the arbitration award should not be vacated even though the panel refused to postpone the underinsured motorist arbitration when it knew that the third party action was still pending and that the tortfeasor's policy had not been exhausted?

2. Whether the trial judge erred in determining that the underinsured motorist arbitration award should not be vacated even though Providence Washington Insurance Company was substantially prejudiced by the Arbitrators' denial of adjournment of the underinsured motorist arbitration?

3. Whether the trial judge erred in declining to enforce the exhaustion clause contained in clause A(2) of Providence Washington Insurance Company's underinsured motorist policy?

4. Whether the trial judge erred in declining to enforce clause C(2) of Providence Washington Insurance Company's underinsured motorist policy which provides that the underinsured motorist coverage does not apply to the direct or indirect benefit of any insurer under any workers' compensation, disability benefits or similar law?

5. Whether the trial judge erred in declining to enforce clause D(2) of Providence Washington Insurance Company's underinsured motorist policy which provides that the underinsured motorist carrier will not pay for any element of loss for which a person is entitled to receive payment for the same element of loss under any workers' compensation, disability benefits or similar law?

---

* Retired Justice assigned to the Superior Court.

1. No record was made of the arbitration hearing.

¶ 6 We address Providence's first three claims as one: whether the arbitrators' refusal to postpone the hearing until resolution of the third-party action violated the exhaustion provision of the policy and whether the panel's refusal to postpone the hearing prejudiced Providence?

¶ 7 The parties agree that this case is governed by the Uniform Arbitration Act (UAA). *See* 42 Pa.C.S. § 7302 *et seq.* The parties also agree that the matter is governed by the following standards:

### § 7314. Vacating award by court

(A) GENERAL RULE.—

(1) On application of a party, the court shall vacate an award where:

(i) the court would vacate the award under section 7341 (relating to common law arbitration) if this subchapter were not applicable;

\* \* \* \*

(iv) the arbitrators refused to postpone the hearing upon good cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section 7307 (relating to hearing before arbitrators), as to prejudice substantially the rights of a party; ...

42 Pa.C.S.A. § 7314.

■ ¶ 8 Essentially, Providence argues that it was prejudiced because the panel refused to postpone the hearing pending resolution of the plaintiff's third-party action and because, as a result of the fact that the third-party action was pending, plaintiff had not exhausted the limits under the tortfeasor's policy pursuant to the Providence UIM policy. Clause A(2) of the UIM policy issued by Providence provides in relevant part:

2. We will pay all sums the "insured" is legally entitled to recover as damages from the owner or driver of an "underinsured motor vehicle" only after all liability bonds or policies have been exhausted by judgments or payments.

¶ 9 This court has addressed the viability of exhaustion clauses in several recent cases. In *Boyle v. Erie Insurance Co.*, 441 Pa.Super. 103, 656 A.2d 941 (1995), this court declared that an exhaustion clause that requires that the limits of bodily insurance coverage must be exhausted prior to any claim for underinsured motorist coverage was against public policy and did not preclude recovery by the insured from underinsured motorist coverage. *Id.* at 942. We nonetheless required that a credit must be given to the insured's insurance company for any difference between such a settlement and the ultimate award of damages. *Id.* at 943.

¶ 10 In *Chambers v. Aetna Casualty*, 442 Pa.Super. 155, 658 A.2d 1346 (1995), we expressly determined that failure to settle a claim for the tortfeasor's full policy face value did not bar an insured's subsequent claim for underinsured motorist coverage, but held that the insurer could not also be required to pay the insured any gap between the partial settlement and the limits of the underinsured motorist coverage. *Id.* at 1348. In *Kelly v. State Farm Insurance Company*, 447 Pa.Super. 214, 668 A.2d 1154 (1995), this court addressed the issue of whether the plaintiffs were required to exhaust the liability coverage available to the underlying tortfeasor, or whether the exhaustion clause was void as against public policy. We stated:

Because we find *Boyle* and *Chambers* are dispositive on the issue of how the exhaustion clause in the instant case should be interpreted so that it does not violate the legislative mandate of the MVFRL, we find that the clause must be interpreted to give [the insurer] "credit" for the ... liability coverage carried by [the tortfeasor], before [plain-

tiffs] are entitled to under-insurance coverage.

*Kelly*, 668 A.2d at 1157.

¶ 11 More recently, in *Sorber v. American Motorists Insurance Co.*, 451 Pa.Super. 507, 680 A.2d 881 (1996), appellant, American Motorists Insurance Company, was given a credit to insulate it against any liability for underinsured payments for the difference between the settlement and the face value of the tortfeasor's policy. The settlement represented eighty percent of the tortfeasor's liability coverage. American Motorists had not alleged any concrete benefit from delay or what prejudice would occur by not delaying, other than it must accept the settlement and waive its subrogation rights or tender the draft to its insureds and pursue its subrogation rights. The court stated: "We already have declared that exhaustion clauses as a predicate for coverage under underinsurance provisions of an insurance contract are void as against public policy. This, in reality, is what appellant is doing by not approving the settlement." *Sorber, supra* at 882. The court went on to state:

> If the insureds wish to accept the tender of less than the face amount of the tortfeasor's policy, and the insurer nonetheless is to receive a credit against the uninsured motorists' award for the full value of the policy, *Boyle* is satisfied. *Boyle* stands for the proposition that an insurer may not unreasonably withhold permission to settle for less than the face value of the tortfeasor's policy limits when it will be protected by a credit for the difference against any liability it

may incur for underinsurance coverage. That reasoning applies herein. Two months is sufficient time to consider a settlement offer. Further, the fact that a settlement has not yet occurred does not alter this.

*Id.* at 882–83.[2]

¶ 12 We find, then, that the foregoing cases are applicable here. Providence, despite its argument that it was "forced to pay 'gap' coverage" on plaintiff's claim, was credited the face value of the tortfeasor's liability coverage, $100,000.00, and therefore its rights were not prejudiced by the panel's refusal to enforce the exhaustion clause or postpone the arbitration hearing. *See* 42 Pa.C.S.A. § 7314; *Sorber, supra.*

■ ¶ 13 In its final two issues, which we will address as one, Providence contends that the trial judge erred in declining to enforce clause C(2) and D(2) of Providence's underinsured motorist policy. Clause C(2) provides:

EXCLUSIONS

This insurance does not apply to any of the following:

\* \* \* \*

(2) The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

Clause D(2) provides as follows:

> We will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss"

---

2. In his Concurring Statement in *Sorber*, President Judge McEwen expressed his concerns with this court's application of the precedent in *Boyle*, a pre-Act 6 case, to cases arising after the enactment of Act 6. President Judge McEwen pointed out that the cases following *Boyle*, post-Act 6 cases, applied *Boyle* without analyzing the effect of the Act 6 amendments, which had made underinsured motorist coverage voluntary rather than mandatory. President Judge McEwen stated:

> In light of [the] holding of *Kelly*, compelling arbitration of an underinsured motorist

claim arising under a policy issued after the effective date of Act 6, where the tortfeasor offered only 25% of his available coverage, I am unable to discern when, if ever, an insurer can properly invoke its contractual right to require exhaustion of an applicable liability policy. Thus, it would appear that our Court again has revisionist pen in hand, this time to alter the MVFRL to preclude any policy issued in conformity therewith from containing an exhaustion clause. Thus it is that I concur in the result.

*Sorber, supra* at 883.

under any workers' compensation, disability benefits or similar law.

¶ 14 Providence argues that under these clauses, plaintiff should have been precluded from introducing at the arbitration hearing evidence of medical bills and lost wages that have been or will be covered by workers' compensation benefits. Further, Providence argues that because it is the employer's underinsured motorist carrier as well as workers' compensation carrier, it would have to assert a lien against itself in order to prevent double recovery.

¶ 15 We find the case of *Gardner v. Erie Insurance Co.*, 555 Pa. 59, 722 A.2d 1041 (1999) dispositive. In *Gardner*, our supreme court addressed the question of whether an employee who sustained injuries in the scope of his employment and received workers' compensation benefits can, in addition, claim uninsured motorist benefits. The court held that "an employee receiving worker's compensation benefits for injuries sustained in an automobile accident involving a co-employee's vehicle and arising out of wrongful third-party conduct is not precluded by Section 205 of the [Worker's Compensation] Act from seeking uninsured motorist benefits from the co-employee's insurance carrier." *Id.* at 72, 722 A.2d at 1047.

■ ¶ 16 Further, in *Warner v. Continental/CNA Insurance Companies*, 455 Pa.Super. 295, 688 A.2d 177 (1996), this court held that "a plaintiff's recovery is not reduced by the amount of workers' compensation benefits, and the workers' compensation carrier has the right of subrogation for any benefits paid in connection with the action." *Id.* at 182. We explained:

> Allowing the injured employee to recover underinsured or uninsured motorist benefits from his or her employer's motor vehicle insurer will create a fund against which the employer's work[ers]' compensation carrier can exert its subrogation lien. Where our legislature, aware of the prior appellate court precedent which specifically permitted the re-

covery of uninsured and underinsured motorist benefits from an employer's motor vehicle insurer, did not expressly provide in the recent amendments to the Acts that recovery of optional uninsured/underinsured motorists benefits under a policy of insurance issued to the claimant's employer was prohibited, we cannot conclude that the express terms of section 303 of the Work[ers]' Compensation Act bar recovery of uninsured/underinsured benefits otherwise available to an injured employee.

*Id.* at 184. The fact that Providence is the carrier for both underinsured motorist coverage and workers' compensation coverage does not preclude application of this law. We find no error or prejudice. 42 Pa. C.S.A. § 7314.

¶ 17 Order affirmed.