Caroline **KRAKOWER**, Appellant,

v.

**NATIONWIDE MUTUAL INSURANCE COMPANY, Appellee.**

Superior Court of Pennsylvania.

Argued Feb. 27, 2001.

Filed Dec. 28, 2001.

Reargument Denied Feb. 28, 2002.

David C. Corujo, Media, for appellant.

James C. Haggerty, Philadelphia, for appellee.

Before DEL SOLE, President Judge, EAKIN and LALLY–GREEN, Judges.

DEL SOLE, President Judge:

¶ 1 This is an appeal from a trial court order vacating an arbitration award entered against Nationwide and in favor of Appellant based on a claim for underinsured motorist coverage. We reverse and remand for further proceedings.

¶ 2 Appellant, driving a car insured by Quaker City Insurance Company (Quaker City), was struck from behind by a vehicle operated by Mary Flanagan. Appellant brought a tort action against Flanagan who was covered under a policy issued by Allstate Insurance Company with a liability limit of $15,000/$30,000. During the pendency of her action against Flanagan, Appellant sought underinsured motorist coverage from Appellee Nationwide Mutual Insurance Company (Nationwide). Appellant pursued this coverage after being advised by the Pennsylvania Property and Casualty Insurance Guarantee Association (PIGA) that her carrier, Quaker City, was in liquidation due to insolvency and that she should pursue other coverage. Appellant sought coverage from Nationwide because it issued a policy of insurance to Appellant's mother and Appellant was a resident of her mother's household at the time of the accident. Appellant demanded underinsured motorist arbitration with Nationwide and offered Nationwide a credit of $15,000, representing the amount available under Flanagan's third party coverage. Nationwide contended that the claims were not ripe for arbitration until the underlying tort action had been resolved, but the arbitrators rejected this

claim, ordered arbitration and eventually issued an award to Appellant in the amount of $50,000. The January 24, 2000, award directed Appellant to give Nationwide a credit for the full $15,000 available under Flanagan's third party coverage and stated that "Nationwide shall not be obliged to make any payment on account of this award until Plaintiff's action against the tortfeasor is resolved and concluded by payment of any settlement or judgment."

¶ 3 Appellant's case against Flanagan proceeded to a jury trial resulting in a verdict in favor of Flanagan on February 10, 2000. On February 22, 2000, Nationwide filed a motion to vacate the arbitration award. Therein it asserted that the arbitrators erred in permitting the claims to proceed without first requiring resolution of the tort action, that recovery of underinsured motorist benefits was barred by a household exclusion in the policy, and that the proper primary source for underinsured motorist benefits was PIGA. The trial court considered Nationwide's motion and ruled in its favor finding the underinsured motorist claims were not ripe until the limits of all applicable liability policies had been exhausted or resolved. The court found the arbitration action seeking underinsured motorist benefits was premature and Appellant should have been estopped from bringing it while the underlying tort action was pending. It stated "[a]llowing the UIM claim to proceed forward first merely gave rise to inconsistent results." Trial Court Opinion 10/20/00 at 10.[1]

¶ 4 The Nationwide policy at issue provided that disputes regarding the right to recover underinsured motorist coverage were to be resolved in arbitration conducted within the provisions of the Pennsylvania Arbitration Act of 1927. Although the Act of 1927 was repealed and replaced by the Act of 1980, the current statute contains provisions that govern agreements to arbitrate under the prior Act. Section 501(b) of the Act of 1980 provides that 42 Pa.C.S.A. § 7302(d)(2) shall apply to agreements "which expressly provide for arbitration pursuant to the former provisions of the Act of April 25, 1927." See Act of 1980, Oct. 5, P.L. 693, No. 142 (codified as the Historical Note to 42 Pa. C.S.A. § 7302(d)(2)). Thus, a court asked to review an arbitration award made under the provisions of the Act of 1927 may modify or correct the award where it is "contrary to law and is such that had it been a verdict of a jury the court would have entered a different judgment or a judgment notwithstanding the verdict." 42 Pa.C.S.A. § 7302(d)(2); *Meerzon v. Erie Insurance*, 380 Pa.Super. 386, 551 A.2d 1106 (1988).

¶ 5 Thus, the trial court was to consider whether the arbitrators' ruling was an error of law. The trial court concluded that such an error was committed when the arbitrators acted on the underinsured motorist claim prior to resolution of the pending tort action. The trial court based its ruling on what it determined was the purpose of underinsured motorist coverage, to provide recovery where applicable tort liability policies are insufficient, and on the specific exhaustion language contained in the policy. The policy provided that "no payment will be made until the limits of all other auto liability insurance and bonds that apply have been exhausted by payment."

¶ 6 This Court in *Harper v. Providence*, 753 A.2d 282 (Pa.Super.2000), had occasion to consider whether it was appropriate to

---

1. Because the court based its ruling on its conclusion that a determination regarding underinsured motorist coverage must await a decision in any pending tort action, the court did not consider Nationwide's alternative arguments in support of its motion to vacate.

postpone an underinsured motorist arbitration when a third party action was pending and the tortfeasor's policy had not been exhausted. The policy in *Harper* contained an exhaustion clause much like that found in the present case. It provided that underinsured motor vehicle coverage would be paid "only after all liability bonds or policies have been exhausted by judgments or payments." *Id.* at 284. This Court concluded that, where the underinsured motorist carrier was credited the face value of the tortfeasor's liability coverage, its rights were not prejudiced by the refusal of the arbitration panel to enforce the exhaustion clause or postpone the arbitration hearing until the third-party action was concluded.

¶ 7 In this case, Nationwide was given a credit for the full amount of Flanagan's coverage. Thus, under the dictates of *Harper*, the arbitrators committed no error of law in refusing to postpone the hearing or in refusing to enforce the exhaustion clause. Arbitration was the chosen means for dispute resolution under the insurance contract. It is designed to provide parties with an expedient means to decide the merits of a claim. This purpose would be frustrated if it were necessary to postpone underinsured motorist arbitration proceedings until all third party actions were resolved. Such a practice would be contrary to the social policy behind arbitration, which is to provide quick dispute resolution and prompt compensation for injured claimants.

¶ 8 We recognize that permitting underinsured motorist arbitration matters to proceed while third party actions are pending may produce, as in this case, inconsistent results. However it is not all that uncommon for a jury to reach one conclusion and a set of arbitrators to reach a different result based on the same set of facts. Had an arbitration award been entered in favor of the insurer and a jury verdict rendered in favor of the insured, the insured would have no right to seek to void the arbitration ruling because it was inconsistent with the jury verdict. Therefore, irrespective of the outcome of the third party action, it is appropriate to allow the underinsured motorist arbitration action to proceed where the insurer is given credit for the full amount of the third party liability policy limits.

¶ 9 Accordingly, we find no support for the trial court's ruling vacating the arbitration award on the first basis presented by Nationwide in its motion to vacate. In support of its motion Nationwide also set forth other claims. It asserted that recovery is barred by the terms of the household exclusion set forth in the policy, that the proper primary source of payment for underinsured motorist benefits is PIGA, and that the plaintiff may not stack underinsured motorist benefits under the Nationwide policy. The trial court did not rule on these claims in view of its decision with respect to the arbitrators' actions. On the state of the record before us we conclude that a remand is necessary to permit the trial court to consider and rule on Nationwide's outstanding claims made in its motion to vacate.

¶ 10 Order reversed. Case remanded. Jurisdiction relinquished.