# Nationwide Insurance Company v. Schneider

C.P. of Delaware County, no. 03-1680.

*Michael A. Cognetti* and *Andrew G. Cassidy,* for plaintiff.

*S. Stanton Miller Jr.,* for defendant.

BURR, *J.,* October 7, 2004—The defendant, Paul P. Schneider, has appealed from the order granting the motion for summary judgment of the plaintiff, Nationwide Insurance Company, in this declaratory judgment action which sought a determination as to whether or not the defendant insured was eligible for underinsured motorist coverage under an automobile insurance policy issued to him by the plaintiff. Despite the policy's express terms and conditions requiring him to do so, defendant, without obtaining plaintiff's prior consent or informing plaintiff about the occurrence of the motor

vehicle accident in which he sustained injuries, had settled claims for the limit of bodily injury liability coverage from the insurer of the vehicle driven by the individual responsible for causing the accident and for underinsured motorist coverage for less than the policy limit under a policy covering the vehicle defendant was driving at the time thereof. The court ruled that defendant was ineligible for underinsured motorist coverage under the policy issued by the plaintiff and this appeal followed.[1]

The defendant, while engaged in his duties as an Upper Darby Township police officer, was driving an Upper Darby Township police vehicle when, on October 4, 1996, the vehicle was struck in the rear by a car driven by Ayanna Lee Cooper when defendant was stopped at a traffic light on MacDade Boulevard in Ridley Township, Delaware County, Pennsylvania. On May 21, 1999, and in settlement of his claims against Ms. Cooper, defendant accepted the tender of her insurance carrier, American Independent Insurance Company, of $15,000, a sum representing the limit of bodily injury liability coverage available under the American Independent policy. (Copy of signed general release form, at declaratory judgment complaint, exhibit B.) In accepting this tender, defendant executed a release of any and all claims arising from this accident. *(Id.)*

Defendant then pursued a claim for underinsured motorist benefits through a Granite State Insurance Company automobile policy which covered the vehicle he was driving at the time of the incident and which pro-

---

1. There was no trial in this action prior to entry of the court's order. Therefore, the holding in *Chalkey v. Roush,* 569 Pa. 462, 805 A.2d 491 (2002), necessitating the filing of post-trial motions prefatory to the taking of an appeal, was not implicated sub judice.

vided $1 million in non-stackable underinsured motorist coverage. (Copy of declarations page for Granite State insurance policy, at declaratory judgment complaint, exhibit C.) On or about December 21, 2001, defendant settled his primary underinsured motorist claim with Granite State for $750,000, or a sum that was $250,000 below the available policy limit. (Copy of signed settlement agreement and release of Granite State Insurance Company "in full settlement and discharge of all claims which are or might have been the subject of the underinsured motorist policy," at declaratory judgment complaint, exhibit D.) This agreement called for an immediate cash payment of $500,000 to the defendant, and monthly payments in the amount of $1,725 for a period of 20 years. (*Id.* at exhibit A appended to settlement agreement.)

At the time of the accident, defendant was also a named insured under a personal automobile insurance policy issued by the plaintiff, Nationwide Insurance Company, which included $200,000 in underinsured motorist coverage for two vehicles, with $100,000 thereof applicable to each in stackable UIM coverage. (Copy of Nationwide policy, at declaratory judgment complaint, exhibit G.) Defendant, on February 4, 2002, or more than five years following the accident, and nearly three years following the settlement of his bodily injury claim with American Independent Insurance Company, and two months following his settlement with Granite State Insurance Company, notified plaintiff for the first time of the occurrence of this accident and of his intent to pursue underinsured motorist benefits under the Nationwide policy covering his own motor vehicles. (Copy of defendant's letter of intention to pursue benefits, at de-

claratory judgment complaint, exhibit F.) Plaintiff then filed this declaratory judgment action raising a number of grounds for denying the UIM benefits sought under the Nationwide policy issued to the defendant. The parties agreed to allow the court to resolve the dispute by way of their cross-motions for summary judgment and the arguments and exhibits appended thereto.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff enumerated several grounds said to merit the granting of summary judgment in its favor.[2] Plaintiff claimed that, in settling with Granite State Insurance Company for $750,000 instead of for the underinsured motorist policy limit of $1 million, defendant had failed to exhaust the primary underinsured motorist coverage available to him as required by the statutory scheme included in the MVFRL, 75 Pa.C.S. §1701 et sequitur, establishing the priority of recovery of benefits where a number of insurance policies provide coverage following a motor vehicle accident:

---

2. Plaintiff alleged certain other matters which either have not been raised at this juncture by the defendant or are simply not germane to this appeal. Among these were contentions that defendant failed to assert a claim for benefits within the statute of limitations for a contract action, although the limitations period cited, 42 Pa.C.S. §5525, clearly sets the period for the commencement of litigation and not of a claim for insurance benefits; that defendant's signing of a general release of all "parties" from liability for the incident released Nationwide from responsibility for payment of benefits as well, an allegation which was a complete non-starter inasmuch as Nationwide was never a "party" to any personal injury action arising from this accident; and that defendant failed to seek arbitration of this claim within the two-year time limit that the terms of the policy required.

"Section 1733 Priority of recovery

"(a) General rule.—Where multiple policies apply, payment shall be made in the following order of priority:

"(1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.

"(2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.

"(b) Multiple sources of equal priority.—The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim." 75 Pa.C.S. §1733.

Plaintiff contended, as an additional ground for relief, that the defendant had settled both his bodily injury claim against Ms. Cooper and his primary underinsured motorist claim against Granite State without first notifying the plaintiff of this accident, nor obtaining plaintiff's consent to settle as required by the express terms and conditions of the policy issued to him.[3]

---

3. The Nationwide insurance policy in issue was replete with provisions which required an insured to obtain plaintiff's prior consent to settle underlying claims before eligibility for coverage could be triggered. The terms and conditions specifically pertaining to underinsured motorist benefits were included in policy Endorsement 2358 with the "consent to settle" requirement expressed in the following language:

"Endorsement 2358—Underinsured motorist coverage (PA)

"Coverage exclusions—(8) Bodily injury of any insured if the insured settles, without our written consent, with a liable party. (Copy of Nationwide policy and Endorsement 2358 at declaratory judgment complaint, exhibit G, p. 2.)

It is altogether undisputed that defendant never provided plaintiff with notice of this accident nor of his intention to pursue UIM benefits under the Nationwide policy. There is also no question that he did not seek plaintiff's permission to settle either of the previous claims for benefits arising from the injuries sustained in this accident. There was also no question in this action that the applicable terms and conditions set forth in the within Nationwide policy clearly and expressly provided that no payment of underinsured motorist benefits would be made until the limits of all other applicable automobile liability coverage and bonds had been exhausted by payments. (Copy of Nationwide policy and Endorsement 2358 at declaratory judgment complaint, exhibit G, "Limits of payment," paragraph 5, p. 3.) Plaintiff contended that defendant had abrogated his claim for benefits under the Nationwide policy in failing to first exhaust the primary underinsured motorist coverage provided under the Granite State insurance policy.

Defendant pleaded in his cross-motion for summary judgment only that the issues surrounding his claim for underinsured motorist benefits from the plaintiff were matters reserved for arbitration according to the terms of the Nationwide policy, and that the court lacked jurisdiction to resolve them. (Defendant's cross-motion for summary judgment, passim.) The jurisdictional issue,

---

"Insured person's duties—(2) We require the insured to file suit against any and all liable parties to preserve and protect our subrogation rights. Failure to do so precludes recovery under this coverage. (3) The insured must obtain our written consent to: (a) settle any legal action brought against any liable party; or (b) release any party." (Copy of Nationwide policy and Endorsement 2358 at declaratory judgment complaint, exhibit G, pp. 2-3.)

which, as noted in the judgment order (at pp. 102-103, *infra*), was decided against the defendant, has not been raised as a matter for consideration in this appeal, and must, perforce, be deemed waived. *Baysmore v. Brownstein,* 771 A.2d 54 (Pa. Super. 2001); *In re Estate of Daubert,* 757 A.2d 962 (Pa. Super. 2000).

Defendant argued in response to plaintiff's motion that, given his intention to grant plaintiff a "credit" for the $250,000 in underinsured motorist coverage not disbursed to him under his employer's policy with Granite State Insurance Company, there was no cause for implementation of the "exhaustion" clause in the instant policy which required him to obtain the full million dollars in benefits from Granite State Insurance Company before he became eligible to claim underinsured motorist benefits from the plaintiff insurer. (Defendant's reply memorandum opposing plaintiff's motion for summary judgment, pp. 14-15.) Defendant cited, in support of this contention, to the case authorities of *Krakower v. Nationwide Mutual Insurance Co.,* 790 A.2d 1039 (Pa. Super. 2001), *appeal denied,* 569 Pa. 707, 805 A.2d 524 (2002) (table); *Harper v. Providence Washington Insurance Co.,* 753 A.2d 282 (Pa. Super. 2000); *Boyle v. Erie Insurance Co.,* 441 Pa. Super. 103, 656 A.2d 941 (1995), *appeal denied,* 542 Pa. 655, 668 A.2d 1120 (1995) (table); and *State Farm Insurance Companies v. Ridenour,* 435 Pa. Super. 463, 646 A.2d 1188 (1994), *appeal denied,* 540 Pa. 585, 655 A.2d 516 (1994) (table). *(Id.)*

Defendant further argued that his failure to obtain plaintiff's consent to settle should not be held against him because this was a claim for second priority or "excess" underinsured motorist benefits as contemplated in Endorsement 2358 of the Nationwide policy which, by

its very terms, anticipated claims for underinsured motorist benefits from different carriers. (Defendant's reply memorandum opposing plaintiff's motion for summary judgment, pp. 11-12.) Defendant additionally asserted that, in initially submitting his underinsured motorist insurance claim to the first priority underinsured motorist carrier, only to Granite State Insurance Company, instead of to Granite State and Nationwide at the same time, he was merely complying with the requirements set forth in section 1733 of the Motor Vehicle Financial Responsibility Act, *supra.* *(Id.)*

Citing to the case authority of *Nationwide Mutual Insurance Company v. Lehman,* 743 A.2d 933 (Pa. Super. 1999), *appeal grnt'd,* 565 Pa. 173, 772 A.2d 413 (2000), *appeal dism. as improv. grnt'd,* 568 Pa. 665, 795 A.2d 978 (2001) (table), defendant further contended that "an insurer's consent to settle is only 'implicated' where the insurer's subrogation rights have been prejudiced by the insured's settlement with the tort-feasor without the insurer's consent," and that plaintiff had made no such showing. *(Id.)*

Having determined that defendant failed to meet his burden of proving entitlement to judgment in his favor, the court issued the following judgment order granting plaintiff's motion for summary judgment and denying the cross-motion for summary judgment of the defendant:

"And now, March 31, 2004, upon agreement by the parties that this action for declaratory judgment shall be decided by, and upon consideration of, the motion of the plaintiff, Nationwide Insurance Company, for summary judgment, and the cross-motion for summary judgment of the defendant, Paul P. Schneider, together with the

memoranda of law and exhibits presented in support thereof, it is ordered and decreed that the plaintiff's motion for summary judgment will be, and hereby is, granted, and that the defendant's cross-motion for summary judgment will be, and hereby is, denied. Judgment is entered in favor of the plaintiff, Nationwide Insurance Company, and against the defendant, Paul P. Schneider, pursuant to the applicable terms and conditions set forth in the subject Nationwide policy of insurance, as well as the case authorities, inter alia, of *Bottomer v. Progressive Casualty Insurance Co.,* 816 A.2d 1172 (Pa. Super. 2003), citing to 42 Pa.C.S. §7541(c)(2) (court has jurisdiction pursuant to Declaratory Judgments Act to decide coverage issues under an insurance contract even where the parties have agreed to arbitrate); and *State Farm Insurance Companies v. Ridenour,* 435 Pa. Super. 463, 646 A.2d 1188 (1994) (exhaustion of underlying underinsured coverage limits required before excess underinsured coverage can be awarded)." (Declaratory judgment order entered on March 31, 2004.)

The defendant filed a timely appeal from the foregoing judgment order and submitted the following concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b):

"(1) The trial court erred in concluding that appellant failed to exhaust limits of first priority UIM coverage, although appellant extended to Nationwide a 'credit' for receipt of the full limits of first priority UIM coverage.

"(2) The trial court erred in concluding that *State Farm Insurance Companies v. Ridenour, [supra],* was dispositive and precluded appellant's claim for second priority UIM benefits, because appellant did not exhaust the limits of first priority UIM coverage.

"(3) In the event that the trial court additionally considered the consent to settle issue, embodied in the *State Farm Insurance Companies v. Ridenour, [supra],* decision, and determined to resolve this issue in favor of Nationwide, it is respectfully submitted that the trial court erred, in that appellant obtained consent to settle with the tort-feasor from the first priority underinsurer (Granite State), pursuant to section 1733(b) of the MVRFL, and Nationwide did not advance any evidence of prejudice. *Nationwide Mutual Insurance Company v. Lehman, [supra].*" (Defendant's concise statement of matters complained of on appeal, pp. 1-2.)

Defendant's issues on appeal are discussed under the appropriate headings below.

### CONSENT TO SETTLE

Defendant asserted in paragraph three of his concise statement that, in the event that the court considered the consent to settle issue as embodied in the *State Farm Insurance Companies v. Ridenour, supra,* decision, the court erred in resolving this issue in favor of the plaintiff because defendant had obtained consent to settle his claim against Ms. Cooper from the first priority underinsurer (Granite State), pursuant to section 1733(b) of the MVRFL, and because Nationwide did not advance any evidence of prejudice to its ability to subrogate, pursuant to the case authority found in *Nationwide Mutual Insurance Company v. Lehman, supra.* (Concise statement of matters complained of on appeal, paragraph 3.) It must first be noted that section 1733 of the MVFRL posits no consent requirement as advanced by the defendant, but is concerned solely with the priority of payment where multiple motor vehicle insurance policies

apply to motor vehicles involved in an accident and the necessity for exhaustion of one category of benefits before the next may be pursued. There is no issue that defendant failed to follow the requisite statutory priority in seeking liability and underinsured motorist benefits from the within carriers. There was, on the other hand, no appropriate legal authority cited in support of the claim that defendant was free to ignore Nationwide's express policy provisions which required him to obtain written consent to settle the prior insurance claims because he had previously obtained consent from Granite State to settle with the tort-feasor. This contention, therefore, must be deemed waived. *Nimick v. Shuty,* 440 Pa. Super. 87, 100, 655 A.2d 132, 138 (1995) (arguments that are not appropriately developed are waived); *Smith v. Penbridge Associates Inc.,* 440 Pa. Super. 410, 427 n.12, 655 A.2d 1015, 1024 n.12 (1995) (same); *Gallagher v. Sheridan,* 445 Pa. Super. 266, 665 A.2d 485 (1995), *appeal denied,* 544 Pa. 631, 675 A.2d 1249 (1996) (table) (where appellant has failed to cite any authority in support of a contention, the claim is waived); *Hercules v. Jones,* 402 Pa. Super. 662, 578 A.2d 43 (1990), *aff'd rem. on other grnds.,* 415 Pa. Super. 449, 609 A.2d 837 (1992) (where appellant presented a position without elaboration or citation to case law, court declined to address phantom argument).

Defendant additionally raised the contention that, pursuant to the case authority of *Nationwide Mutual Insurance Company v. Lehman, supra,* plaintiff failed to show the requisite prejudice to its subrogation rights ensuing from defendant's failure to obtain its consent to settle the other insurance claims.[4] *Lehman* involved the ques-

4. Defendant referred also to the case of *Sparler v. Fireman's Insurance Co. of Newark N.J.,* 360 Pa. Super. 597, 521 A.2d 433 (1987),

tion of whether an insurer could deny underinsured motorist coverage after its insured had settled a claim against a tort-feasor for available bodily injury coverage without first obtaining the insurer's consent as required by the express terms of its policy. The court there noted initially that the UIM carrier's denial of coverage would have prevented the Lehmans from obtaining adequate liability coverage to compensate for all of the injuries sustained in their accident, a result contrary to the policies underlying the inclusion of underinsured motorist insurance in the Motor Vehicle Financial Responsibility Law. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 935; *Allwein v. Donegal Mutual Insurance Co.,* 448 Pa. Super. 364, 374, 671 A.2d 744, 749 (1996), *appeal denied,* 546 Pa. 660, 685 A.2d 541 (1996) (table); 75 Pa.C.S. §1731(b) (defining UIM coverage as "protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles"). *Id.*

Unlike the defendant in the instant case, the Lehmans presented evidence showing that, when medical costs accruing from the subject accident continued to grow, Mr. Lehman had periodically contacted their personal automobile insurance carrier to advise that it might be necessary for him to pursue UIM benefits. *Id.* Just prior to trial in their personal injury action arising from the

*appeal denied,* 518 Pa. 613, 540 A.2d 535 (1988), for the proposition that a signed tort-feasor release in settlement of a bodily injury claim generally did not operate to discharge a separate contractual obligation of a carrier to provide underinsured motorist benefits. Nevertheless, the fact that *Sparler* was a pre-MVFRL action decided over a decade before *Lehman* and its progeny rendered it unhelpful to the defendant.

accident, the Lehmans' attorney contacted their UIM carrier with a request for consent to settle with one of the two tort-feasors responsible for the incident, but received only the reply that the Lehman file was not immediately available and that no consent would issue until an agent had the opportunity to review it. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 935-36. The UIM carrier gave no further response and the Lehmans settled the referenced bodily injury claim without obtaining the necessary consent to do so. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 936.

The Lehmans' personal injury case was then tried to a jury and the other tort-feasor's insurer subsequently paid his portion of the verdict. *Id.* The Lehmans thereafter pursued a UIM claim for the unrealized portion of the judgment and their insurer initiated a declaratory judgment action seeking a determination that violation of the consent to settle requirement of the policy precluded payment of the underinsured motorist insurance claim. *Id.* The court found that the insurer was obligated to pay the claim because, although it was aware of the ongoing tort action against the two tort-feasors and had notice that UIM benefits might be sought by the Lehmans, the insurer then failed to pursue its usual course of periodically contacting counsel for the insured to ascertain whether or not a UIM claim, in fact, would be forthcoming. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 938-39. A further ground for denying judgment to the insurer in *Lehman* was said to have been the insurer's failure to exercise diligence in undertaking an investigation into the assets and earning capacity of the settled tort-feasor in order to ascertain whether an

effort to obtain subrogation would have succeeded. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 939-40. The court held that the judgment-proof status of the tort-feasor (established by means of her sworn affidavit) had rendered subrogation impracticable for the UIM insurer, thereby removing any prejudice from the Lehmans' failure to obtain the insurer's consent to settle the underlying bodily injury claim as well as destroying any justification the insurer might have asserted for withholding its consent. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 940-42.

The instant circumstances are readily distinguishable from those in *Lehman.* First, this defendant never contacted the plaintiff to give notice of this accident and of his intention to seek UIM benefits before actually submitting the claim for this coverage on February 4, 2002. Secondly, this matter involves a claim for excess UIM benefits following settlement not only for the limit of bodily injury coverage under the tort-feasor's policy, but also of a primary UIM claim for far less than the sum available according to the stated policy limit. Defendant presented no evidence, such as a sworn affidavit from Ms. Cooper attesting to her limited assets and employment income, so as to prove that subrogation of the underlying insurance benefits might have been seen as impracticable, and thus non-prejudicial to the plaintiff's interest. *Nationwide Mutual Insurance Company v. Lehman, supra,* 743 A.2d at 942. Most crucially, the fact that defendant settled with Granite State for $750,000, when $1 million was available to him from that carrier, and then either abandoned or, perhaps, never sought a claim for additional benefits exceeding the $200,000 in UIM benefits available to him from this insurer by the

sum of $50,000, without ever notifying plaintiff of the potential for this claim, utterly belies the seriousness of any contention raised in this appeal.

Defendant never provided to the court either explanation or rationale for the actions or inaction involved in the failure to obtain the Granite State policy limit of UIM coverage, and, in point of fact, a clear inference available from the facts and circumstances surrounding this matter is that defendant may have settled the Granite State claim too soon, and sought here to cover the mistake by attempting to obtain additional benefits from Nationwide. Indeed, the "worst case scenario" inferrable therefrom was that defendant was seeking to obtain the greatest possible sum in benefits he could muster by staking a claim under every policy offering applicable coverage in order to maximize his "take" from this accident. For the foregoing reasons, and after weighing the equitable considerations necessary in rendering a decision in a declaratory judgment action, it was fairly to be concluded that defendant's insistence that plaintiff should have been required to show prejudice from defendant's not obtaining its consent to settle the prior insurance claims following a protracted failure to provide notice of the accident and of the potential for this claim might be reasonably deemed to have been frivolous. *Nationwide Mutual Insurance Company v. Lehman, supra; White v. Keystone Insurance Co.,* 775 A.2d 812 (Pa. Super. 2001), *appeal grnt'd,* 567 Pa. 745, 788 A.2d 378 (2001).

It is here noted that, at the time of this writing, the only Westlaw case to distinguish *Lehman* was the matter of *Weichey v. Doerr,* 60 D.&C.4th 88 (Butler Cty. 2001), a legal malpractice action alleging negligence attendant to the plaintiff's attorney's failure to obtain his client's

UIM insurer's consent to settle and its waiver of subrogation before settlement of an underlying tort action. The defendant lawyer moved for summary judgment on grounds that no prejudice to the UIM carrier accrued from settlement of the tort action in the absence of the UIM carrier's consent. In reaching the decision to deny that motion on grounds of the defendant's lack of standing to raise it, the court in *Weichey* deemed *Lehman* not only inapplicable to the legal malpractice claim, but inapposite as well because the Lehmans' UIM insurer had not only been notified of a potential claim for UIM benefits, but had also been asked for consent to settle, and simply had not tendered a timely response. In the case sub judice, as in *Weichey,* the UIM insured had made no prior contact with the carrier at all. In noting this circumstance as to Ms. Weichey, the court there generally referenced the Superior Court's affirmance of an earlier ruling in a suit Ms. Weichy brought against her motor vehicle insurance carrier which denied her the right to bring an underinsured motorist claim due to her failure "to provide notice of and to obtain" consent to settle the underlying tort case from her insurer. See *Weichey v. Doerr, supra,* 60 D.&C.4th at 94; *Weichey v. State Farm Mutual Insurance Co.,* 723 A.2d 244 (Pa. Super. 1998) (table), *appeal denied,* 559 Pa. 668, 739 A.2d 167 (1999) (table). Although *Weichey v. Doerr, supra,* was decided by a sister court and is therefore not controlling upon this tribunal, it is urged that *Weichey*'s holding that *Nationwide Mutual Insurance Company v. Lehman, supra,* was inapposite to circumstances such as these where the defendant made no prior effort to notify the plaintiff of the occurrence of this accident nor to obtain plaintiff's consent to settle both of the prior claims for insurance benefits, should prevail.

For all of the foregoing reasons, it is respectfully suggested that there was no error of law in resolving this issue against the defendant.

## EXHAUSTION CLAUSE

The defendant contends also that the court erred in concluding that defendant failed to exhaust the limits of the Granite State UIM coverage, "where he extended to Nationwide a 'credit' for receipt of the full limits of the UIM coverage paid by Granite State," and that *State Farm Insurance Companies v. Ridenour, supra,* precluded the instant claim for UIM benefits on grounds that defendant did not exhaust the $1 million in coverage available under the Granite State policy. (Defendant's concise statement of matters complained of on appeal, paragraphs 1 and 2.) It is here again noted that defendant made no effort whatsoever to provide an explanation to the court as to why he settled the Granite State UIM claim for less than the stated policy limit, nor why it later became necessary for him to seek additional UIM benefits from the plaintiff. Defendant instead presented the egregiously self-serving argument that he intended to "credit" the plaintiff for receipt of the full limit of the available UIM coverage payable by Granite State, and that this credit would allow for the conclusion that defendant had complied with the "exhaustion" requirement set forth in the Endorsement 2358 of the Nationwide policy, thus permitting him to obtain additional UIM benefits from the plaintiff. It goes without saying that defendant's position represents an entirely unpersuasive explication of the applicable law.

The assessment of the deficiencies in defendant's argument is buttressed by the fact that his cited case authorities in support thereof are either inapposite or irrel-

evant to the facts and circumstances of the instant case. See *Krakower v. Nationwide Mutual Insurance Co., supra* (UIM arbitration could proceed, even though civil trial in accident case was not concluded, where arbitrators gave insurer a "credit" for the full amount of the tort-feasor's liability insurance coverage); *Harper v. Providence Washington Insurance Co., supra* (employee not required to exhaust limits of tort-feasor's liability insurance coverage before seeking UIM benefits through arbitration, and, as in *Krakower,* arbitration panel was not required to postpone hearing pending resolution of tort action); *Boyle v. Erie Insurance Co., supra* (exhaustion clause in policy that barred UIM coverage where insured settled claims with liability insurer for less than coverage limits, invalidated, and UIM carrier was entitled to credit for tort-feasor's liability coverage payout); and *State Farm Insurance Co. v. Ridenour, supra* (insured was not precluded from recovering UIM benefits under her own policy to the extent that her injuries exceeded the limits of her employer's UIM coverage).

With the exception of *State Farm Insurance Co. v. Ridenour, supra,* the case law used to support defendant's contention that he should be permitted to give a so-called "credit" to the plaintiff and that his failure to exhaust the underlying primary UIM benefits should be foregone, does not address the particular question in issue here. All of defendant's case authorities pertain to the failure of an insured to exhaust prior bodily injury liability benefits before pursuing primary UIM benefits and not to requirements for exhaustion of primary UIM benefits ahead of the pursuit of claims for excess underinsured motorist insurance coverage. Two of those cases *(Krakower, supra,* and *Harper, supra)* even involved

sums to be determined by means of an adjudicatory process. In the case sub judice there neither had been, nor, apparently, would there have been a valuation by a tribunal or otherwise of what defendant's claim for primary UIM benefits was worth, nor did defendant present evidence of its value to this court. Hence, any need at all for him to pursue coverage from the plaintiff as well as any valuation of this claim, remained both speculative and illusory.

Despite defendant's reliance on other aspects thereof, *State Farm Insurance Co. v. Ridenour, supra,* stands firmly on point with the ruling issued by this court that an insured must first exhaust underlying UIM coverage pursuant to the same expressly stated policy limitation in issue sub judice before excess UIM coverage could become awardable under the insured's own policy. Accord: *In re Insurance Stacking Litigation,* 754 A.2d 702 (Pa. Super. 2000), *appeal denied by In re Leed,* 565 Pa. 673, 775 A.2d 807 (2001); *National Union Fire Insurance Co. v. IREX Corp.,* 34 D.&C.4th 268 (Delaware Cty. 1997), *aff'd,* 713 A.2d 1145 (Pa. Super. 1998); 75 Pa.C.S. §1733(a). In *Ridenour,* as here, the insured, Ms. Ridenour, settled claims for primary UIM coverage available from her employer without first obtaining her own UIM insurance carrier's consent. The court there, as here, ruled that the policy's terms and conditions requiring her to do so had been violated, and that the claim for excess UIM coverage later sought was, on that basis alone, disallowed. *State Farm Insurance Co. v. Ridenour, supra.*

It is evident not only from review of defendant's cited case law, but also of the scant Pennsylvania legal authority available on the subject, that there is no precedent for defendant's attempting to "award" plaintiff a

"credit" for $250,000 in coverage that was $50,000 in excess of the $200,000 available to him as secondary UIM coverage under his own policy. Moreover, neither the spirit nor the language of the cited authorities would authorize defendant to award plaintiff a "credit" toward coverage which was never claimed by, nor awarded to, him. Defendant's argument that the excess nature of the coverage sought sub judice precluded the need for him to obtain plaintiff's consent to settle either of the underlying insurance claims is without merit because *Ridenour* mandates the enforcement of the Nationwide policy's requirement that plaintiff's consent to settle those claims had to be obtained before defendant's eligibility for the within excess UIM benefits could be triggered. Finally, because defendant provided neither effective nor appropriate legal argument challenging *Ridenour,* his argument that the court erred in concluding that *Ridenour* was dispositive in precluding defendant's claim for second priority UIM benefits had no merit whatsoever, because *Ridenour* clearly provided the law that was controlling in this case.

## CONCLUSION

The principles governing the interpretation of a contract of insurance are familiar and well settled. The task of interpreting a contract is generally performed by a court rather than by a jury. *Pempkowski v. State Farm Mutual Automobile Insurance Co.,* 451 Pa. Super. 61, 678 A.2d 398 (1996), *aff'd,* 548 Pa. 23, 693 A.2d 201 (1997). The goal of that task is to ascertain the intent of the parties as manifested by the language of the written instrument. *Id.* Where a provision of a policy is ambiguous, the policy provision is to be construed in favor of the insured and against the insurer, the drafter of the

agreement. *Borgia v. Prudential Insurance Company,* 561 Pa. 434, 750 A.2d 843 (2000).

The well-settled scope of appellate review for a grant of summary judgment states that summary judgment is properly granted where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits, demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. Pennsylvania Rule of Civil Procedure 1035.2(2); *American Rehabilitation and Physical Therapy Inc. v. American Motorists Insurance Co.,* 829 A.2d 1173 (Pa. Super. 2003), *rev'd on other grnds.,* 849 A.2d 1202 (Pa. 2004). The trial court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. *(Id.)* The moving party's evidence must clearly exclude any genuine issue of material fact, and the trial court will be reversed only if there has been an error of law or a clear abuse of discretion. *Britamco Underwriters Inc. v. Weiner,* 431 Pa. Super. 276, 636 A.2d 649 (1994), *appeal denied,* 540 Pa. 575, 655 A.2d 508 (1994) (table).

The issue in this case involved the construction of an insurance policy, an issue properly decided by the court as a matter of law in a declaratory judgment action. 42 Pa.C.S. §7533; *State Automobile Mutual Insurance Company v. Christie,* 802 A.2d 625 (Pa. Super. 2002). The standard of review of an order resolving a declaratory judgment action is limited to a determination as to whether the trial court clearly abused its discretion or committed an error of law, and the appellate court's judgment will not be substituted for that of the trial court if the court's determination is supported by the evidence of record. *State Automobile Mutual Insurance Company*

*v. Christie, supra.* The trial court's decision will be reviewed as a decree in equity, and factual conclusions will not be set aside unless they are not supported by adequate evidence. *White v. Keystone Insurance Co., supra.*

With these standards in mind, and for all of the foregoing reasons, it is respectfully submitted that the factual scenario and circumstances of this action and the law applicable thereto required this court to resolve this action in favor of the plaintiff; that there was neither error of law nor abuse of discretion in so dispensing of this matter; and that the order memorializing the disposition of the plaintiff's and the defendant's cross-motions for summary judgment should not be disturbed on appeal.